[Civ. No. 23593.   Second Dist., Div. One.   Aug. 28, 1959.]

CLYDE G. DU PRE, Respondent, v. WILLIAM BOGUMILL, Appellant.

Butler & Hegner for Appellant.

Albert Vieri for Respondent.

FOURT, J.—This is an appeal from a judgment on a verdict in favor of the plaintiff and against the defendant in an action involving the sale of a restaurant and liquor license.

The judgment was divided into three sections: the first of which provided for $5,500 damages for breach of contract, the second of which provided for $1,575 for work and labor and services, and the third of which provided for $130 for other work and labor.

The appellant recites in his brief that he is appealing from the first portion of the judgment which awards damages for breach of contract. No reference is made in his brief to that part of the judgment having to do with the work and labor claims, and we therefore assume that he has abandoned the appeal excepting as to the award for damages for breach of contract.

A résumé of the facts is as follows: the plaintiff operated a restaurant and a bar known as the Starlight Café during the latter part of 1955. He desired to sell the establishment and the defendant had shown some interest in purchasing the place. During November and December of 1955, the plaintiff, the defendant and two others had talked of forming a corporation in which each of the four would have an interest. The corporation was to own and operate a cocktail bar in Belmont Shores. By December 10, 1955, the negotiations had not developed to the point where the parties had agreed upon a sale of the Starlight. On December 10, 1955, the plaintiff received an offer from another person to buy the

Starlight for $16,000 cash. The plaintiff was anxious to sell. This offer of the 10th was in form of a deposit receipt and plaintiff had to act promptly to accept or reject the offer. The plaintiff advised the defendant of the offer which he had received and stated in effect that he was going to accept the same unless the defendant made a firm offer of some kind. The defendant then, in order to stop the plaintiff from selling for $16,000 cash to the third party, offered to buy the Starlight outright and offered to pay the plaintiff $6,000 in cash and further to give the plaintiff a one-fourth interest in the corporation which was to be formed and which would operate a bar in Belmont Shores. On or about December 12, 1955, the parties themselves, made a written memorandum to the effect that the plaintiff would sell the Starlight for $6,000 and a one-quarter interest in the bar which would be built in Belmont Shores. The offer was accepted by the plaintiff and a contract was entered into between the parties. They went to the office of James G. Butler, an attorney who did then represent and apparently had theretofore represented the defendant. It was contemplated that the transfer of the license and the formation of the new corporation would proceed with the utmost speed. The plaintiff was then being pressed by some of the creditors of the Starlight.

On December 13, 1955, the defendant went into the physical possession of the Starlight. There was conflicting testimony as to whether the defendant thereafter operated the Starlight as the manager for the plaintiff or otherwise. The parties consulted the attorney, James G. Butler, to have him draft the necessary documents with reference to the transfer. They asked the attorney in effect to do what was necessary to the end that the transaction would be legal and proper.

On December 16, 1955, an escrow agreement which had been prepared by the attorney was signed by the parties. The agreement provided, among other things, that the defendant agreed to purchase the Starlight and the liquor license of the plaintiff for the sum of $6,000 plus the transfer in the future of a one-quarter interest in a Belmont Shores cocktail lounge, which was to be built; the plaintiff agreed to hand to the escrow holder (who was the attorney) a bill of sale made by himself to the defendant of the stock and trade, fixtures and liquor license; the plaintiff agreed to assign the lease of the premises to the defendant; the agreement then provided that a ''notice of intended sale'' affecting the business would be handed to the escrow holder and he would then cause the same

to be published and recorded (the notice was to provide " '. . . That a sale, transfer and assignment of the aforesaid stock in trade, fixtures, equipment, on sale liquor license and good will and/or mortgaging of the fixtures and equipment of the said business will be made, and the consideration therefor will be paid on the 15th day of January, 1956, at 10:00 o'clock A. M., at the office of James G. Butler, Attorney at Law, Compton, California,' and at which time you are hereby authorized and instructed to deliver to Vendee, said Bill of Sale, unrecorded, and any other instruments called for by Vendee, which are being held herein, and deliver to Vendor any other instruments called for by Vendor, which are being held herein.'')

The agreement also set forth that the plaintiff and the defendant were each to pay one-half of the attorney's fee. Defendant agreed to assume all indebtedness against the business up to $6,000 and if the defendant paid any bills in excess of the $6,000, the plaintiff was to save the defendant harmless from such sums. The $6,000 amount was later modified to read $7,000. The plaintiff was to give immediate possession of the premises to the defendant and the plaintiff agreed to transfer the liquor license to the defendant. Time was stated to be of the essence and it was specified that if the escrow was in a condition to close on January 15, 1956, any party who had complied might, by making a proper demand, secure the return of whatever he had put into the escrow; otherwise the escrow was to be closed as soon as possible. There were other provisions of the agreement with which we are not concerned. There was also an Addendum to this agreement executed on December 16, 1955, which provided: 1. That the transfer of a one-fourth interest in the proposed cocktail lounge to be erected, would be made within 120 days which time might be extended 60 days under certain circumstances; 2. That the defendant was to bear all expenses connected with the transfer of the liquor license; and 3. That if at any time during the operation of the business by the vendee he surrenders or abandons the premises, or loses the license, or attempts to transfer the license to another location, all fixtures now in the premises shall remain and become the property of the vendor.

On December 15, 1955, while the attorney was still in the process of preparing the escrow agreement for the plaintiff and defendant, the defendant entered into an agreement with

a Mr. Riley to the effect that in the event he, the defendant, sold the Starlight that he, the defendant, would pay Riley one-half of the net proceeds thereof.

After the 16th of December, 1955, the defendant apparently took no further steps with reference to the formation of the new corporation or with reference to the transfer of the liquor license to himself. The plaintiff was engaged in working at the Starlight and at another place of business, owned by the defendant. The plaintiff apparently had no assets other than the Starlight business and to secure a livelihood was reduced to such employment as the defendant might give him.

Some time after December 16, 1955, and before January 20, 1956, the defendant told the plaintiff that he wanted to sell the Starlight and the liquor license connected therewith and that he had found a buyer and wanted to save the expense of two license transfers and the costs of two escrows. The defendant requested of the plaintiff that he join with him in the proposed sale and that he make the transfers directly to the buyer, a Mr. Vigelis; and the plaintiff indicated that he would cooperate and acquiesce in such a demand by the defendant. The new buyer was to pay $12,000. The delay theretofore experienced in the completion of any transfer from the plaintiff to the defendant was due to the actions of the defendant. The plaintiff had complied with every request which was made of him. The defendant had failed to take any steps after the signing of the escrow of December 16th to effect a transfer of the license from the plaintiff to himself. The plaintiff as heretofore indicated had no assets, other than the Starlight, and after the execution of the agreement of December 16, he was no longer free to dispose of that property.

A second escrow was established in a bank in Long Beach on January 20, 1956. That escrow set forth that the plaintiff and defendant were the sellers and Vigelis was the buyer.

The plaintiff and the defendant appeared as sellers in the second escrow because the defendant made the demand upon the plaintiff that such be done. The defendant then owned the fixtures and other personal property in the Starlight and was the equitable owner of the business and the liquor license.

Thereafter, to raise funds with which to salvage the Stem Room, the defendant directed the plaintiff to apply for a license and a business transfer to Vigelis before the full amount called for in the escrow was deposited therein. Vigelis,

who had paid only $7,000 into the escrow, took the liquor license and business and resold the same. Vigelis then went through bankruptcy and discharged all claims of indebtedness against him. The defendant compromised his rights against the buyer from Vigelis by selling the fixtures of the Starlight for the sum of $850 net, thereby precluding the possibility of setting aside the sale by Vigelis as a fraudulent transfer.

Appellant contends: 1. That the contract of December 16, 1955, was illegal and against public policy and therefore void; 2. That the plaintiff failed to carry out the terms of the contract; and 3. That the modification of the December 16th contract was illegal.

Section 23300 of the Business and Professions Code provides as follows:

"No person shall exercise the privilege or perform any act which a licensee may exercise or perform under the authority of a license unless the person is authorized to do so by a license issued pursuant to this division."

Section 24075 of the Business and Professions Code at the time in question provided as follows:

"The provisions of Sections 24073 and 24074 do not apply to any transfer of a license made by an executor, administrator, guardian, trustee, receiver, or other person acting in the legal or proper discharge of official duty, or in the discharge of any trust imposed upon him by law, nor to any transfer or assignment, statutory or otherwise, made for the benefit of creditors."

Title 4 of the Administrative Code provides in part as follows:

"60 Transfer of Licenses

" . . . . . . . . . . .

" . . . . . . . . . . .

"(b) The transferee shall make application to the department for a license of the type to be transferred and shall meet all the qualifications required of an original applicant for such license. *The transferor shall join in the application.*

"(c) The transfer fee shall be paid by the transferee and shall accompany the application. The renewal fee shall accompany the transfer fee under circumstances described in Section 24048.2 or Section 24048.4 of the Business and Professions Code.

"(d) The transferee shall not exercise any of the privileges of a licensee until the license is transferred by the issuance

of a license certificate to the transferee. The transferor shall not permit the transferee to exercise any of the privileges of a licensee until the license is transferred. Transfer of title to the licensed business shall coincide with the transfer of the license.

"(e) During the period when the application for transfer is pending before the department, the transferor . . . may enter into a written contract with the transferee pursuant to which the transferee may operate the licensed business as the agent of the transferor. Upon the approval of such written contract by the department, the transferee may operate the licensed business as the agent of the transferor pending notice of final decision by the department on his application for a license."

The attorney for appellant testified in effect that in the drafting of the agreement of December 16th and in giving of advice thereafter, he acted as the attorney for the defendant and he believed that he suggested to the plaintiff that he consult with another attorney but that the plaintiff did not do so. The attorney also testified that he gave no indication that the procedure adopted was not an entirely proper and legal way to effect the transfer, and that he never called anything to the attention of the plaintiff to the effect that there might be a problem arising out of an unlicensed person operating a licensed business. He further stated that he was of the opinion that the agreement as drawn was proper on its face and that any irregularity was in the performance of the agreement and not otherwise.

We think that there is no merit to any of the contentions of appellant.

The defendant should have taken the initiative in securing a transfer of the liquor license to himself pursuant to the original understanding of the parties. The agreement as made in the first instance contemplated an immediate transfer of the license and the immediate formation of the corporation which was to own and operate the Belmont Shores establishment. The defendant, once having taken possession, had a choice of making an application for a transfer of the license as contemplated in the agreement; or he could have filed an agreement which in effect would have authorized him to operate as the agent of the plaintiff; or he could have operated the restaurant as such, and not sold liquor or operated under the liquor license until the transfer was completed. The defendant and his attorney each testified that

the defendant acted as the manager for the plaintiff in the operation of the place from about December 13 until the sale to Vigelis.

█ It is set forth in 12 California Jurisprudence 2d 272, section 69:

"If an agreement which does not provide for a method of accomplishing its purpose can be accomplished by any legal method, it must be assumed that such method was contemplated when the contract was made and will be pursued, and it will not be presumed that the parties intended to perform in an illegal manner. █ Moreover, where the contract can be performed in a legal manner as well as an illegal manner, it will not be declared void because it was in fact performed in an illegal manner."

█ Furthermore, the operation of the business by the defendant was not under the circumstances a consideration for the contract. The appellant relies heavily upon *Teachout* v. *Bogy*, 175 Cal. 481 [166 P. 319]. But, in that case it was provided that the purchaser would in effect be operating the business for five and one half years before he was the owner and before the license would be transferred. In the case before us, time was of the essence and it was understood that the transfer was to take place as quickly as possible. There is nothing in the evidence before us to indicate that the operation of the business by the defendant prior to the transfer of the license and without complying with section 60(e) of title 4 of the Administrative Code was any part of the consideration without which the defendant would not have made the agreement. The contrary is true and as defendant's attorney testified: "It was simply an intent to transfer the liquor license." No delays were expected nor counted upon.

Furthermore, in this case, there is every reason to believe from the evidence that the plaintiff had not the slightest idea that he was a party to the breaking of any law, rule or regulation. The defendant engaged the attorney to draft the documents and to advise them with reference to the transaction and plaintiff relied upon the representations of the attorney that the contract and the proceeding were proper and plaintiff conducted himself at all times as requested by the defendant. No bad motive and no intent to violate the law appears in anywise upon the part of the plaintiff.

It was said in 12 American Jurisprudence, page 647, section 153:

"In order to avoid an agreement which can be legally performed on the ground that there was an intention to perform it in an illegal manner, it is necessary to show that there was the wicked intention to break the law; and if this is so, the knowledge of what the law is becomes of great importance. Accordingly, where a contract could have been performed in a legal manner as well as in an illegal manner, it will not be declared void because it may have been performed in an illegal manner, since bad motives are never to be imputed to any man where fair and honest intentions are sufficient to account for his conduct. The rule has been stated to be that if an agreement can by its terms be performed lawfully, it will be treated as legal, even if performed in an illegal manner; while an agreement entered into with intent to violate the law is illegal, even if the parties may, in performing it, depart from the agreement and keep within the law."

In 12 California Jurisprudence 2d 304, section 104, it was said: "Another exception to the general rule, that parties to an illegal contract cannot recover damages or the value of performance, permits recovery by the party justifiably ignorant of facts of which the other party was not ignorant, or by a party who was not acquainted with minor statutory or executive regulations relating to a particular business and who was justified in presuming special knowledge by the other party of such regulations." See also section 599 of Restatement of the Law, Contracts and 12 California Jurisprudence 2d 302—Contracts, section 102.

The defendant did not plead the illegality of the agreement nor did he raise the illegality of the agreement of December 16, 1955, at the trial. The answer of the defendant to the complaint in effect admitted the execution of the agreement, and then set forth that the plaintiff had not performed his part of the agreement and that the plaintiff had not been damaged, and then, by way of an affirmative defense, the defendant alleged rescission of the agreement. The case was tried upon the theory that the contract was valid and lawful. The illegality raised at the trial was the claim of failure to comply with section 60, subdivision (e) of title 4 of the Administrative Code.

A party should not be permitted to completely change his position and adopt a new theory on appeal where questions other than law only are presented. Such would be unfair to the trial court and the plaintiff. (See *Slaughter* v. *Goldberg, Bowen & Co.*, 26 Cal.App. 318, 325 [147 P. 90].)

The jury in this case heard the testimony to the effect that the defendant requested the plaintiff to transfer the liquor license to Vigelis rather than to the defendant, that the plaintiff did everything required or expected of him under the agreement, and that whatever the defendant demanded of him, the plaintiff performed. Apparently the jury was convinced and determined that the defendant had no legitimate complaint against the plaintiff with reference to any claim of nonperformance. The trial court was likewise apparently so convinced as it denied the motion for a new trial.

In the sale from the plaintiff and defendant to Vigelis, it was the defendant who elected to so proceed. The defendant simply secured a substituted performance to his nominee, Vigelis, rather than to himself and thereby saved himself several hundreds of dollars.

No person should be permitted to found a claim upon his own inequity. (*Lillie* v. *Andrews,* 24 Cal.App. 10 [139 P. 10].)

Plaintiff had a substantial asset and he was offered $16,000 cash for it. The defendant depleted the liquor stocks, took some of the more valuable items of personal property from the Starlight and removed them to his Stem Room, paid the bills to the extent of between $8,700 and $9,500, then sold the business for $12,000.

In effect the defendant now asserts that the plaintiff should lose everything because of the system of intrigue worked out by defendant and because the plaintiff did what he was directed to do by the defendant. As a matter of fact, if the appellant's contentions are carried to their logical conclusions, each of the parties involved in this transaction would be guilty of a felony in that, according to the defendant's contention, they agreed apparently, under the advice of the attorney, to commit a crime. (Pen. Code, § 182.)

There is nothing to indicate that the plaintiff was *in pari delicto* with the defendant and the plaintiff's rights should not be lost because he relied and placed his confidence in the defendant and the defendant's attorney. (See *Fischer* v. *Ostby,* 127 Cal.App.2d 528 [274 P.2d 221]; *Fong* v. *Miller,* 105 Cal.App.2d 411 [233 P.2d 606].)

The judgment is affirmed.

Lillie, J., concurred.

White, P. J., did not participate.