[Civ. No. 18834. First Dist., Div. Two. July 18, 1960.]

ROBERT C. SHEPHARD et al., Respondents, v. GRACE LERNER, Appellant.

Alfred M. Miller for Appellant.

Joseph A. Brown for Respondents.

748

GOOD, J. pro tem.*—Appellant Lerner, owner and lessor of premises known as the Evans Hotel, situate on Broadway at Front Street in San Francisco, appeals from a judgment in favor of respondents that declared a lease dated April 6, 1951, void and determined that no enforceable rights or duties subsisted thereunder. Respondents Shephard were the lessees and Kircher and Pennebaker were guarantors of performance of lessees' obligations under the lease. For some five years prior to the date of the lease Kircher and Pennebaker had operated the premises as a hotel and apartment house under a preexisting lease executed in 1946. The evidence shows that the structure was built originally as a hotel with store rentals on the ground floor. In 1941 it had fallen into disuse for hotel purposes and was in a state of general dilapidation. Thereafter many of the large exterior rooms were divided by the erection of single panel tongue and groove partitions and apartments were formed by combining two to five rooms. There were originally some 240 rooms of which 147 had been combined to make 55 apartment rentals. Gas ranges without vents and some sinks were installed therein, though in some apartments there was no water and others used existing basins as sinks. There were four toilets on each floor, three allocated to men and one to women. In 1946 Kircher and Pennebaker leased the premises and commenced a program of cleaning and largely decorative rehabilitation of unused hotel rooms and the use of the structure for hotel and apartment rentals was continued by them until they assigned their lease to the Shephards, at or about which time the new lease was executed for which they became guarantors. No structural changes appear to have been made during the Kircher and Pennebaker occupancy. At the time of the execution of the new lease the Shephards demanded an addenda thereto that was prepared by appellant's counsel and recited that the use of gas stoves then in the premises should not be deemed a violation of the lease and that the Shephards were authorized "to use the said premises in substantially the same manner and for the same purposes" as the premises had been used by Kircher and Pennebaker.

In 1954 the Health Department of the City and County of San Francisco ordered the discontinuance of use of all stoves in all of the rooms of the hotel and the vacation of use of 126 of the rooms in their then condition. A condemnation action was eventually filed against the premises involving numerous

*Assigned by Chairman of Judicial Council.

violations of both municipal code and State Housing Act. Without detailing the violations found to exist they included lack of one hour fire-resistive construction in partitions, floors and ceiling in many areas throughout the building; lack of toilet facilities in apartments; lack of ventilation or flues for gas stoves and plates; lack of door separating kitchen from living and bed rooms in many apartments; lack of approved fire alarm system; unenclosed stairways and lack of stairway to roof, etc. During the pendency of the condemnation proceedings, respondents filed their action for declaratory relief alleging a controversy as to whether they were absolved from the lease by virtue of "legal frustration" and generally for a declaration of the obligations of the parties. Appellant filed a cross-complaint to recover rental for the entire remainder of the term of the lease and also for damages, alleging $5,000 for failure to restore and maintain master and hidden plumbing and $50,000 for deteriorations permitted and alterations made without her consent.

The trial of the condemnation was consolidated with the trial of the issues framed by the pleadings involved herein. In effect, the trial court found that the premises had been converted from hotel to apartment uses prior to the execution of the leases without permit or compliance with structural regulations affecting such change; that the lease was knowingly made by both parties to continue hotel and apartment uses in contravention of both local ordinances and state statutes governing the same; that the parties were *in pari delicto* and, as it was a contract for an illegal purpose, no enforceable rights or duties arose thereunder.

The appellant contends that the finding of illegality is contrary to both the facts adduced in evidence and the law in that the lease contained a provision requiring the tenant to maintain the premises in good order, do all necessary repairs and, also, to comply with all requirements of federal, municipal and state authorities in force at the time of its execution or which might be enacted thereafter. It is argued that if the tenants had complied with these provisions there could be no illegality in the rentals for hotel, apartment or store uses. Distinguishing between unlawful purposes (prostitution, gambling, etc.) contemplated by a lease and lawful purposes (store, hotel, etc.) carried on in an unlawful manner, many cases are cited for the obviously sound proposition that in the latter instance the contract is not illegal or void. (*Wayman Investment Co.* v. *Wessinger*, 13 Cal.App. 108 [108 P. 1022];

*Stockburger* v. *Dolan,* 14 Cal.2d 313 [94 P.2d 33, 128 A.L.R. 83] ; *People* v. *Brophy,* 49 Cal.App.2d 15 [120 P.2d 946] ; *Du Pre* v. *Bogumill,* 173 Cal.App.2d 406 [343 P.2d 415].) But in each of these cases the courts found that there was nothing in the contracts themselves nor anything required or contemplated by them that was illegal. ▇▇ In the instant case, the very subject of the lease, the building and its use for hotel and apartment purposes, is the focal point of all of the violations and the argument overlooks the compelling inferences that arise from the terms of the addenda executed contemporaneously with and as part of the lease. It reads in part as follows : "Lessee is further authorized to use the said premises in substantially *the same manner and for the same purposes* as the said premises are now being used by present lessee." (Italics supplied.) Substantially all of the violations had subsisted throughout the entire term of the preexisting lease and the obvious import of the language of the addenda was to approve and authorize their continuance. ▇▇ While appellant testified that she did not know of the apartment uses, the trial court was not bound to accept her testimony in view of the conflicting testimony that in 1946 the parties were "taking a chance" on apartment rentals and the counter-inference that, as owner and lessor, she knew of the former tenants' use and mode of operating the premises at the time the addenda was executed. In *Mansfield* v. *Hyde,* 112 Cal.App.2d 133 [245 P.2d 577], the court refused either to enforce payments or to permit recovery of payments theretofore made under a contract to care for a minor child where the foster parent had not complied with the licensing provisions of the Welfare and Institutions Code. In *Holm* v. *Bramwell,* 20 Cal.App.2d 332 [67 P.2d 114], the court refused to permit a contractor to recover on a mechanic's lien for payments made to an unlicensed sub-contractor. *Del Rey Realty Co.* v. *Fourl,* 44 Cal.App.2d 399 [112 P.2d 649], is an example of the many cases holding that no recovery may be had for services rendered in connection with sales of real property where the licensing provisions of the Real Estate Brokers Act have not been complied with. ▇▇ In these cases, the underlying transactions involved a violation of law and the courts considered them to be against public policy. The rule does not rest upon considerations of justice between the parties but on the principle that public policy requires that certain transactions be discouraged. The same policy considerations apply with equal force to contracts that involve a violation of valid regulations designed to promote

public health and safety. ■ Because the illegal uses had subsisted since 1946 under a lease containing like covenants to repair and to comply with all valid regulations, the terms of the addenda constitute an interpretation by the parties themselves of the meaning and effect of their contract. (*Cicinelli* v. *Iwasaki,* 170 Cal.App.2d 58, pp. 70, 71 [338 P.2d 1005].) ■ The terms of the addenda, specifically authorizing one violation and generally approving past operations that were clearly in violation of the law, at the very least have the effect of rendering the meaning and application of the covenants to repair and to comply with valid governmental regulations uncertain and ambiguous. Such uncertainty and ambiguity may properly be resolved by reference to the previous customs and practices of the parties. ■ The findings of the trial court are therefore fully supported by the record.

Because the contract cannot be enforced without reliance upon the illegal transaction, appellant's contentions based upon theories of (a) unjust enrichment; (b) the general obligations of tenants to keep premises in repair; and (c) the exceptional cases in which courts will enforce an executed illegal contract, do not require comment except to note that the last theory is supported by the citation of cases wherein the contracts had in fact terminated and new promises of accounting and payment were made between partners to illegal transactions; also, there were no rights of third persons to be protected. (*Denning* v. *Taber,* 70 Cal.App.2d 253 [160 P.2d 900]; *Norwood* v. *Judd,* 93 Cal.App.2d 276 [209 P.2d 24].) In the instant case, the lease with its addenda had several years to run before expiration and the rights of the public were directly involved.

The judgment is affirmed.

Kaufman, P. J., and Draper, J., concurred.

A petition for a rehearing was denied August 17, 1960, and appellant's petition for a hearing by the Supreme Court was denied September 11, 1960.