GLYCO *v.* SCHULTZ ET AL.

(No. 3851—Decided November 24, 1972.)

Municipal Court of Sylvania.

*Mr. Rollind Romanoff, Mr. Wayne R. Peppers,* and *Mr. Thomas Willoughby,* for plaintiff.
*Mr. John A. Harris, III, Mr. C. Thomas McCarter, Mr. Frank S. Merritt* and *Mr. R. Michael Frank,* for defendants.

LACHIN, J. Plaintiff commenced this action in forcible entry and detainer on May 25, 1972, seeking possession of certain premises described as 203 North King Road, Holland, Ohio, and praying for rent allegedly due.

Upon defendants' motion the first cause of action of the complaint was dismissed for failure to serve a three-day notice as required by R. C. 1923.04.

Thereafter defendants answered denying that rent was legally owed and raised affirmative defenses alleging that plaintiff had breached the lease contract, had breached the implied warranty of habitability and had breached the implied covenant of quiet enjoyment. Defendants counterclaimed for damages as the result of the breaches noted above.

There is no substantial dispute about the facts in this case. In September of 1970, plaintiff, Mrs. Jane Glyco, rented a house and thirty acres located at 203 North King Road to defendants. Under the oral month-to-month lease contract the stipulated rent was to be two hundred dollars ($200.00) per month.

The defendants introduced evdence to show that, when they moved into the house in September of 1970, there existed serious and substantial violations of the Lucas County Housing Code. The electrical system was in a state of disrepair and woefully underserviced, the furnace was faulty, the steps were deteriorating, and the upstairs floor was weak. These conditions continued throughout the tenancy and resulted in great inconvenience to defendants, loss of personal property and expenditures for repairs. This evidence was not contradicted by plaintiff.

The testimony indicated a constant and continual need to purchase and replace burned out light bulbs and fuses. Two television sets and an electric clock burnt up and were lost, and an electrical fire started due to the condition of the electrical system. The furnace was not properly maintained and on a number of occasions refused to work or emitted smoke and fumes soiling the walls and furniture. Repairs to the furnace were contracted and paid for by defendants. The unmaintained steps collapsed when defendant's mother stepped upon them, necessitating their repair. The weak floors rendered it unsafe for the father to go into the children's rooms.

Defendants further stated, and were not contradicted, that the plaintiff landlord was notified by letter on at least three occasions about the condition of the house. Plaintiff refused to repair the defects or to reimburse defendants for their losses or expenses of repair. In fact, plaintiff never inspected or repaired the property during the defendants' tenure, or during the tenure of the former tenants. Instead, plaintiff spent the majority of each year in Florida, leaving no manager or caretaker to maintain the property in her absence.

Defendants testified that damages due to the above conditions amounted to one hundred forty six dollars ($146.00) in repairs and the loss of a one year old color television set purchased for six hundred fifty dollars ($650.00). These loses do not include the second television set which was borrowed from defendants' brother, the clock for which no value was given, and is exclusive of the money spent for replacement of light bulbs and fuses.

In August 1971, less than a year after defendants moved in, a third person, a farmer, entered upon the rented property and began plowing. Defendants had the sheriff eject him. Plaintiff then notified defendants that she had rented the land to the third party. Plaintiff denied defendants' request for an adjustment in rent due to these changed circumstances. The portions of the property where defendants had formerly planted their garden, pastured their pony and tended a strawberry patch, were

thereafter plowed and planted by the new tenant. The defendants were forced to give away the pony which they had purchased for forty dollars. For the remainder of the tenancy, the defendants did not have the use of this part of the property.

Throughout these events, even in the face of the conditions of the house and plaintiff's refusals to repair, defendants continued to pay the full rent. In November 1971, defendants began to pay one-half of the rent each month in an effort to secure the necessary repairs. These payments continued through March 1972. The evidence further showed that the former tenants, university students who had rented only the house, paid one hundred twenty dollars ($120.00) per month rent throughout their tenancy.

The uncontroverted testimony of Mr. Donald Brown, Housing Sanitarian, Lucas County District Board of Health and Mr. Donald Werr, Jr., Electrical Inspector, Lucas County Department of Inspection established that the following violations of the Minimum Housing Code and the standards thereunder existed on the property: electrical service substandard (60 amps), insufficient electrical circuits, insufficient electrical outlets, surface wiring of lamp cord (18 guage), use of surface outlets ("fire hazard" outlets), use of oversized fuses, bathroom outlets not grounded, use of brass light sockets, inoperative porch light socket, failure to maintain furnace, failure to maintain steps, weak floors upstairs, leak in kitchen ceiling, sewage empties on ground, broken floor tile in bathroom, and insufficient ceiling height in upstairs bedrooms.

Both inspectors stated that the condition of the house, especially the substantial electrical violations constituted a serious danger to the health and safety of the occupants. As a result of these conditions, the house was subsequently condemned as unfit for human habitation.

In brief, the court holds that under Ohio law a lease is a contract and should be interpreted and construed like any other contract. The law of the place of making of a contract enters into and becomes a part of the contract,

and where a lessor breaches a material duty imposed by such law the contract is breached. Standards established by any local building, housing, or health codes, in existence at the time and place of the making of a lease contract enter into and become a part of the contract, and where a lessor fails to abide by the provisions of such codes he is liable to the lessee in a suit sounding in contract. Such breach gives rise to the ordinary contract remedies.

In addition where a lease contract is made in violation of a statutory prohibition designed for the protection of health and welfare, such as a housing code, the contract is illegal and void. An illegal contract confers no rights on the wrongdoer.

In Ohio a lease is a contract as well as conveyance and is to be interpreted with reference to contract principles. *Sigler-Bach Co.* v. *Wurlitzer Co.* (1929), 8 Ohio Law Abs. 267, 268; *Cook* v. *Village of Paulding* (1965), 33 O. O. 2d 165, 167, 207 N. E. 2d 405; *Shinkle, Wilson & Kreis Co.* v. *Birney and Seymour* (1903), 68 Ohio St. 328, 333; *Lauch* v. *Monning* (1968), 15 Ohio App. 2d 112; See also: *Javins* v. *First National Realty Corp.* (1970), 428 F. 2d 1071, 1075 (D. C. Cir.) *cert. denied* 400 U. S. 925; *Lemle* v. *Breeden* (1969), 51 Hawaii 426, 462 P. 2d 470; *Medico-Dental Bldg. Co.* v. *Horton & Converse* (1942), 21 Cal. 2d 411, 132 P. 2d 457; *Ingram* v. *Fred* (Tex. Civ. App., 1918), 210 S. W. 298.

The rule is well established in this state, that a contract made in violation of a statutory prohibition designed for police or regulatory purposes is void and confers no rights upon the wrongdoer. 11 Ohio Jurisprudence 2d, Contracts, Section 93, 331-33; Restatement of contracts, Section 580 (1933); *e. g., Bell* v. *Northern Ohio Telephone Co.* (1948), 149 Ohio St. 157, 158; *Buchanan Bridge Co.* v. *Campbell et al., Commissioners* (1899), 69 Ohio St. 406. And it is clear that the same rule obtains when a lease contract is entered into in violation of a statute. *E. g., Deal* v. *Garaux Bros. Co.* (1930), 42 Ohio App. 191, 197; *Weizman* v. *Chapin* (1948), 51 Ohio Law Abs. 26, 29.

In the case at bar the evidence was that there existed

upon the premises a number of substantial violations of the Lucas County Housing Code[1] at the time of rental and throughout the tenancy. The housing code expressly prohibits the rental of a dwelling with such violations. Section 4.0 of the code provides that:

"No person shall occupy as owner-occupant, or let to another for occupancy, any dwelling or dwelling unit, for the purpose of living, sleeping, cooking or eating therein, which does not comply with the following requirements:" (listing 28 separate requirements).

And in Section 4.28 of the housing code:

"No owner shall occupy or let to any other occupant any vacant dwelling unless it is clean, sanitary, and fit for human occupancy."

The purpose clause further states that the code is "establishing *minimum* standards governing the conditions of dwellings offered for rent." (Emphasis supplied.)

Having found that at the time the lease contract was entered into, and continuing throughout the tenancy there existed on the premises substantial violations of the Lucas County Housing Code which were known to plaintiffs, the court must consider what rent, if any, plaintiff is entitled to, for defendants' use of demised premises.

Where, as in the present case, a lease contract is entered into in violation of the housing code, it is the better view that the lease contract is illegal and void and confers no rights upon the wrongdoer. See *Brown* v. *Southall Realty Co.* (D. C. Muni. App., 1968), 237 A. 2d 834; *Shephard* v. *Lerner* (1960), 182 Cal. App. 2d 746, 6 Cal. Rptr. 433.

Ordinarily, in illegal contract cases, both parties are considered to be equally at fault, or *in pari delicto*, and will be denied recovery of monies paid pursuant to the illegal contract, *Buchanan Bridge Co.* v. *Campbell et al., Commissioners* (1899), 60 Ohio St. 406.

---

[1]Regulation 1967, Controlling Hygiene and Sanitation of Supplied Facilities, Maintenance, and Occupancy of Dwelling and Dwelling Units in the Lucas County General Health District; passed pursuant to R. C. 3709.21.

However, there is a well recognized exception to the rule of *in pari delicto*—where the statute in question is for the protection of one of the parties and where that party has no real choice but to acquiesce in the illegality, then he will not be held to be *in pari delicto* and denied relief. As stated by the United States Supreme Court in *Thomas* v. *City of Richmond* (1870), 79 U. S. 349, cited with approval, *First Federal S. & L.* v. *Ansell* (1942), 68 Ohio App. 369, 375-76:

"* * * where the law that creates the illegality in the transaction was designed for the coercion of one party and the protection of the other, or where the one party is the principal offender and the other only from a constrained acquiescence in such illegal conduct—in such cases there is no parity of delictum at all between the parties, and the party so protected by the law, or so acting under compulsion, may, at any time, resort to the law for his remedy, though the illegal transaction be completed." *Id.* at 79 U. S. 349, 355.

In the case at bar, the housing code was designed to protect occupants, lessees, and the general public. Defendants living in a substandard house was certainly not by choice, but from a "constrained acquiescence" in the illegality, and in fact, the lessee continually sought to have the defects cured. In addition, as between the parties the lessee is justified in assuming special knowledge by the lessor of the requirements of law, and therefore may recover any rent monies paid in excess of the reasonable rental value of the property in its defective condition during their tenure. See Restatement of Contracts, Sections 604 and 601 (1933).

There is a second, separate and distinct reason supporting the outcome in this case. A contract must be read in light of the statutes and ordinances in effect at the time and place the contract was executed. The general rule in Ohio is that the law in effect at the time and place of the making of the contract enters into the contract and becomes a term thereof.

One of the earliest statements of this rule is found

in the case of *Holbrook* v. *Ives* (1887), 44 Ohio St. 516, 524.

It is also settled that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to incorporated in its terms. Quoting *Von Hoffman* v. *City of Quincy*, 4 Wall 550. *Id.* at 524.

See *Eastern Machinery Co.* v. *Peck* (1954), 161 Ohio St. 1; *Garlick* v. *McFarland* (1953), 159 Ohio St. 539, 545; *Jacot* v. *Secrest* (1950), 153 Ohio St. 553; *Angell* v. *City of Toledo* (C. P. Lucas Cty., 1948), 40 O. O. 54, 88 N. E. 2d 595, *aff'd.* 153 Ohio St. 179 (1950).

This court holds that the Lucas County Housing Code is a law subsisting at time and place of the making of the lease between the parties, and as such, its terms are incorporated by implication into any leasehold contract entered into in this jurisdiction. See R. C. 3709.21. The owner's duty under the code, as has heretofore been established, is to let and maintain the dwelling in compliance with the housing code— to rent a substantially habitable dwelling and maintain it. The duty of maintenance is specifically established by Section 4.20 of the code which states that "[e]very supplied facility, price of equipment, or utility which is required under this regulation shall be constructed, installed or operated so that it will function safely and effectively and shall be maintained in satisfactory working condition." In addition, the purpose clause of the code reiterates that the code establishes minimum standards governing *maintenance* of dwellings.

This statutory duty imposed by the housing code is similar to other statutory duties imposed upon landlords and enforced by Ohio courts. See *e. g. Rose* v. *King* (1892), 49 Ohio St. 213, 224; *Stackhouse* v. *Close* (1911), 83 Ohio St. 339; *Morton* v. *Stack* (1930), 122 Ohio St. 115; *Euphrat* v. *Kingsley* (1927), 5 Ohio Law Abs. 748.

Plaintiff substantially breached the lease in this case, by failing to maintain the premises in accordance with the code after having been notified of the defects by the lessee. This breach constitutes a breach of an implied warranty to maintain the dwelling in conformity with the code. The

consideration for the lease thus failed, leaving the injured lessee with his normal contract remedies, see *e. g. Javins* v. *First National Realty Co.* (1970), 428 F. 2d 1071 (D. C. Cir.), *cert. denied* 400 U. S. 925; 40 A. L. R. 3d 646 (1971).

There is, in addition, a third rationale supporting this decision. In Ohio, a general and unlimited covenant of quiet enjoyment is implied into every lease contract for realty and protects the tenant's right to the peaceful and undisturbed enjoyment and possession of his leasehold. 33 Ohio Jurisprudence 2d, 416, Landlord and Tenant, Section 161 (1958). Where the landlord causes or permits another to enter onto the land leased to the original tenant, he breaches the covenant of quiet enjoyment. Cf. *Steifel* v. *Metz* (1877), 7 O. D. 308. Here, the lessor caused a farmer to enter upon the leasehold and till the soil. Nothing could be a more obvious breach of the covenant of quiet enjoyment.

It would appear that there is some authortiy in Ohio that would support the proposition that a breach of the covenant of quiet enjoyment evicting the original tenant from a portion of the premises relieves that tenant of the duty to pay rent although he remains in possession of the remainder of the premises. *Frankel* v. *Steman* (1915), 92 Ohio St. 197. The court, however, is of the opinion that a total abrogation of the duty to pay rent would unjustly enrich the tenant and be ruinous to the landlord. The better view is that the landlord in such a situation may only recover the reasonable rental value of the remaining premises in quantum meruit, Cf. *McAlpin* v. *Woodruff* (1860), 11 Ohio St. 120, 129, and that the lessee may recover any special damages proximately caused by the breach of covenant, provided those damages are proven. See 41 A. L. R. 2d 1419.

This court also accepts the view advanced by defendant-lessee that where an owner permits the premises to deteriorate to the extent that a substantial interference with the beneficial enjoyment results, the covenant of quiet enjoyment is again breached. The lack of adequate heat, electrical wiring and structural maintenance, certainly in-

terfered with beneficial enjoyment. The defendants did not abandon the house as a result of the breach. However, when the landlord's breach of covenant is raised as an affirmative claim, or counterclaim, there is no requirement of eviction, and the tenant is entitled to damages as will fully and adequately compensate him for the interference with the quiet enjoyment of the premises. The measure of damages for such interference is the difference between the actual rental value of the premises leased and the amount stipulated to be paid under the lease. *Woolworth Co. v. Russo* (App. 1933), 16 Ohio Law Abs. 307.

The court has determined that the contract was illegal from its inception, and that plaintiff breached the implied warranty of habitability resulting in a failure of consideration. Under each of these theories, as with the breach of covenant of quiet enjoyment, the landlord is only entitled to recover the reasonable rental value of the premises. Therefore, the court must undertake to ascertain that value.

The evidence at trial indicated the following with respect to the property:

1. The reasonable value of the house alone in good condition was one hundred twenty dollars per month based upon the rent paid by the former tenants renting only the dwelling house. Thus, the reasonable value of the land would be eighty dollars per month representing the difference between one hundred twenty dollars per month and two hundred dollars per month which was the rent paid by defendants.

2. From September 1970 through July 1971 (11 months), defendants enjoyed full use of the land but the court finds that the value of the dwelling house was diminished by two-thirds based upon the uncontradicted testimony of defendants that substantial violations of the Lucas County Housing Code existed at the premises.

3. When in August of 1971, plaintiff caused the entry of a third party onto the land being rented by plaintiff, defendants were relieved of their obligation to pay rent for the land, as distinguished from the dwelling house.

Thus, the court is of the opinion, based upon the un-

contradicted testimony of defendants and the reports of the housing sanitarian and electrical inspector that the reasonable value of the dwelling house as diminished by the serious safety violations existing therein was forty dollars per month or one-third its possible value. Defendants rented that dwelling house for a total of twenty-two months and thus were obligated to plaintiffs in the amount of eight hundred eighty dollars ($880.00).

In addition, defendants enjoyed full use of the land for a period of 11 months and it also had a value of eight hundred eighty dollars ($880.00). Thus, during the term of the tenancy defendants were obligated to the plaintiffs in the amount of one thousand seven hundred sixty dollars ($1,760).

Thus, plaintiff's claim for rent will be denied as the evidence clearly indicates that there is no rent due and owing to plaintiff and defendants will be awarded one thousand five hundred forty dollars ($1,540) representing the difference between the three thousand three hundred ($3,300) defendants paid for use and occupancy, and the one thousand seven hundred sixty dollars ($1,760) to which plaintiff was entitled in *quantum meruit*.

In addition, substantial evidence was adduced at trial to show that the defendants suffered damages resulting from necessary repairs made by defendants after the plaintiff refused to repair the premises, and resulting from damages to defendants' personal property suffered as the proximate result of plaintiff's failure to maintain the dwelling electrical system in compliance with the Housing Code. These damages amounted to four hundred six dollars ($406.00). The total amount of damages due defendants is therefore one thousand nine hundred forty-six dollars ($1,946). However, pursuant to Civil Rule 54 (C) the judgment will be reduced to one thousand four hundred ninety-three dollars ($1,493), the amount prayed for in defendants' counterclaims. The defendants' answer and counterclaim are hereby amended to conform to the evidence adduced at trial as permitted by Civil Rule 15 (B).

*Judgment for defendant.*