OPINION
Plaintiff-appellant, Anthony Kostoglou (Kostoglou), appeals a decision of the Mahoning County Common Pleas Court dismissing his cause of action to collect past due rent from defendants-appellees, Midkiff Enterprises, Inc. and Willard C. Midkiff, III (hereinafter collectively referred to as Midkiff), following a bench trial.
Kostoglou owns commercial premises located at 2007 Market Street, Youngstown, Ohio. In December 1995, Kostoglou and Midkiff entered into an oral agreement to rent the premises for $650 per month. Midkiff began operating a building materials and construction company from the premises.
Subsequently, on September 12, 1996, Kostoglou and Midkiff entered into a written agreement. In return for $1,950 in back due rent from Midkiff, Kostoglou agreed to either sell the premises to Midkiff or to put together a plan to repair problems that had been plaguing the building.
On February 14, 2000, Kostoglou sued Midkiff for past due rent. Kostoglou claimed that Midkiff had occupied the premises from January 1995 through April 1998 and had failed to make all of the monthly rent payments totaling $22,250. Midkiff answered setting forth various denials and affirmative defenses. Midkiff also counterclaimed seeking remuneration for repairs he made to the building and damages to equipment and materials caused by leaks in the roof.
The case proceeded to a bench trial on January 10, 2001. On January 12, 2001, the trial court filed a judgment entry dismissing both parties' causes of action. This appeal followed.
Kostoglou's first assignment of error states:
 "The Trial Court abused its discretion and committed prejudicial error by dismissing Appellant's Complaint with prejudice for want of prosecution, as the Trial Court's finding is contrary to the manifest weight of the evidence."
Kostoglou maintains that there was uncontroverted evidence that Midkiff occupied the premises for twenty-six months from December 1995 through January 1998 and that the rent was $650 per month. Kostoglou argues that since Midkiff paid rent for only four of the twenty-six months he occupied the premises, he is entitled to the rental payments for the remaining twenty-two months.
Judgments supported by some competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus. See, also, Gerijo, Inc. v.Fairfield (1994), 70 Ohio St.3d 223, at 226. Reviewing courts must oblige every reasonable presumption in favor of the lower court's judgment and finding of facts. Gerijo, 70 Ohio St.3d at 226 (citingSeasons Coal Co., Inc. v. Cleveland [1984], 10 Ohio St.3d 77). In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. Id. In addition, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. Kalain v. Smith
(1986), 25 Ohio St.3d 157, 162.
Commercial leases are governed primarily by contract law. FrenchtownSquare Partnership v. Lemstone, Inc. (May 10, 2001), Mahoning App. No. 99 C.A. 300, unreported, 2001 WL 503068. For a valid contract to exist, there must be an offer and an acceptance. Noroski v. Fallet (1982),2 Ohio St.3d 77, 79. There must be a "meeting of the minds." Id. The fact of the existence of an oral contract and its terms are ordinarily matters for jury determination in light of the evidence offered, to be determined from all the facts, words or silence, acts or inaction, conduct, and circumstances surrounding the parties at the time. Rutledgev. Hoffman (1947), 81 Ohio App. 85. See, also, Ford v. Tandy Transp.,Inc. (1993), 86 Ohio App.3d 364, 380.
In this case, the trial court impliedly found that there was no agreement between Kostoglou and Midkiff to rent the subject premises. The court rested its decision on its perceived lack of testimony or evidence going to the duration of the purported lease agreement. Specifically, the court stated:
 "The Plaintiff called his first witness, Lawrence Myers, who testified that he has occupied the building at 2007 Market Street for four years and there are some leaks in the building and he stated there has been water in the place but he didn't think it was too bad.
 "The Plaintiff took the stand and testified that he walked Defendant through the building in late November, 1995, and rented the building to Defendant Midkiff for $650.00 per month. The Defendant Midkiff took the stand on cross-examination * * * and stated that he rented the building from Kostoglou for his Corporation, the Defendant Midkiff Enterprises, Inc. for $650.00 per month and moved his company into the building in December, 1995. That the Corporation paid by check, $650.00 for the first month's rent, evidenced by check endorsed and cashed by Plaintiff.
 "Defendant further testified that he met with Plaintiff and paid rent arrearage of $1950.00, evidenced by Corporation check endorsed and cashed by Plaintiff. Plaintiff was to get back to Defendant regarding certain repairs that Plaintiff was to make to the building or possible sale of the building to Defendant. Plaintiff did not contact the Defendant thereafter, the Defendant moved from the premises.
 "The burden of proof in this Case is upon the Plaintiff. No testimony was given as to the time of beginning and time of whatever arrangements were ended.
 "The Court will not speculate nor will the Court assume. The evidence, at best, is in conflict[.] The Plaintiff's witness testified that he had occupied the building for four years. It would be difficult for this Court to believe that a car repair business and a building materials and construction company could be occupying the same space at the same time.
 "The Plaintiff is bound by the testimony of his witness. Plaintiff failed to prove by a preponderance of the evidence his case, either against the Defendant Midkiff Enterprises, Inc., or the Defendant Willard C. Midkiff, III." (Jan. 12, 2001 Judgment Entry, pp. 1-2.)
The trial court seems to have melded together the two independent issues of the existence of a contract between the parties and its terms. Both Kostoglou and Midkiff testified that they had entered into a month-to-month lease for the premises at $650 per month. This clearly establishes an oral contract between the parties. However, based on its perception that no testimony was presented as to when the parties' arrangement began and ended, the court found that Kostoglou had failed to make his case. This conclusion is contrary to law and the evidence presented. Just because there is a perceived ambiguity concerning the specific term of an agreement does not necessarily mean that no contract exists. As indicated before, the terms of an oral contract can be determined from all the facts, words or silence, acts or omissions, conduct, and circumstances surrounding the parties at the time.Rutledge, supra. Furthermore, there was competent, credible evidence going to the term of the lease agreement. Both Kostoglou and Midkiff testified that the lease began in December 1995. A check for $650 from Midkiff Enterprises, Inc. to Kostoglou dated December 1, 1995, with a notation that it was payment for rent for the premise for December 1995 corroborates their testimony. (Defendant's Exhibit 1.) Concerning the ending date of the lease, Midkiff stated that he vacated the premises at the end of January 1998. (Tr. 75-76.) Midkiff's testimony remained consistent. He testified that he had occupied the premises for twenty-six months, representing the time period from December 1995 to January 1998. (Tr. 93.)
In reaching its conclusion that the term of the parties' agreement was somehow ambiguous, the trial court seems to have seized upon the testimony of Lawrence Myers (Myers). At the time of trial, Myers was the current tenant of the premises previously occupied by Midkiff. (Tr. 6.) Myers, who runs an automotive repair business from the premises, stated that he had occupied the premises for approximately four years. (Tr. 6.) Since, if true, this would have put Myers in the premises as early as January 1996, the court concluded that Myers' business and Midkiff's business could not possibly have occupied the premises at the same time. (Jan. 12, 2001 Judgment Entry, p. 2.) However, after reviewing Myer's entire testimony, it is clear that he vacillated about the date when he moved into the premises. His testimony on this issue went as follows:
"Q How long have you occupied 2007 Market Street?
"A About four years probably." (Tr. 6.)
* * *
 "Q Mr. Myers, you were a tenant of that building when Midkiff Enterprises was also tenant; were you not?
"A No, I wasn't.
"Q You were not?
"A No.
"Q You took over the building after Mr. Midkiff left the building?
 "A I guess so, because when I moved in, it was — there was nobody in the building. It was me, you know.
"Q Just you?
"A Just me.
 "Q Okay. And that would have been — when? — in 1996 that you took the premises over?
 "A I believe I moved in when he moved out. Right after he moved out. I don't know the exact date, because, you know, I was working another job too, and I just moved in there and I didn't even keep track. But I probably moved in a few months after he moved out. I don't know how long, honestly, you know. I can't —" (Tr. 12-13.)
* * *
 "Q Mr. Myers, the possibility you didn't occupy the building in 1996 and perhaps occupied it later is what I'm asking you. Are you certain of that 1996 date?
 "A All I'm certain of is I took the building over when he moved out (indicating). I'm almost positive.
"Q So it could have been 1998?
"A Yeah. I don't know
"MR. INFANTE: Objection.
"THE COURT: Sustained. You can't testify Mr. Boulas.
 "A I don't have an exact date when I moved there. I can't remember. I just know I moved in when he moved out.
"THE COURT: Are you on a lease or a month-to-month tenancy?
"THE WITNESS: Month to month.
"THE COURT: Okay.
"BY MR. BOULAS.
 "Q What would you say your level of certainty as to the date you gave us?
 "A It's pretty close. I would say I've been there at least four years. I'm almost positive of that." (Tr. 21-22.)
In addition to the uncertainty of his testimony, Myers's testimony was further undercut by the admission of documentary evidence. Midkiff offered into evidence a letter prepared by him on Midkiff Entreprises, Inc. letterhead. (Defendant's Exhibit 3.) The letter is dated September 12, 1996 and signed by both Midkiff and Kostoglou. In it, Kostoglou agreed, in exchange for $1,950 in back due rent from Midkiff, to either sell the premises to Midkiff or put together a plan to repair a list of problems Midkiff was allegedly having with the premises. Midkiff also offered into evidence a copy of the $1,950 check dated September 16, 1996. (Defendant's Exhibit 2.) Midkiff testified that he continued to occupy the premises thirteen to fourteenth months after entering into this written agreement. (Tr. 96.)
The trial court's conclusion that there was no beginning or ending date to the agreement was not supported by competent, credible evidence. Midkiff himself admitted that he occupied the premises for twenty-six months from December 1995 to January 1998. His testimony was consistent in this regard and corroborated, in part, by documentary evidence. In contrast, Myers's testimony, which the trial court seems to have relied upon, was unclear and inconsistent and contradicted by the documentary evidence introduced by Midkiff.
At trial, Midkiff stated that he withheld rent because the roof began leaking water around all of the exterior walls. (Tr. 93.) Since the parties' did have a valid oral lease agreement, this presents the question of whether the leaking roof was a valid defense to Midkiff's obligation to pay rent.
Concerning commercial lease agreements, the Supreme Court of Ohio has observed:
"In a commercial setting, the lessee is in a position to bargain with the lessor over the division of repair responsibilities, and the terms in a commercial lease are left to the parties to negotiate between themselves. Thus, the relationship between the commercial lessor and lessee is not regulated by any statutory regulations, such as the Landlords and Tenants Act; rather, the common law maxim caveat emptor
applies, and `the tenant takes them [the premises] as he finds them with all existing defects of which he knows or can ascertain by reasonable inspection.'" Hendrix v. Eighth and Walnut Corp. (1982), 1 Ohio St.3d 205,208, quoting Ripple v. Mahoning National Bank (1944), 143 Ohio St. 614,621 (Hart, J., concurring). See, also, Fireman's Fund Ins. Co. v. BPSCo. (1985), 23 Ohio App.3d 56, 60; Knickerbocker Bldg. Services, Inc.v. Phillips (1984), 20 Ohio App.3d 158, 161. This court has acknowledged and applied these principles previously. See Mead v. Masonic TempleAssn. of East Palestine (Apr. 24, 1984), Columbiana App. No. 83-C-5, unreported, 1984 WL 7697 at *3.
Kostoglou testified that when he initially showed the building to Midkiff he pointed out where there were leaks. (Tr. 35.) Midkiff admitted that he was told of where there were two leaks when he agreed to rent the premises. (Tr. 98.) However, he also testified that additional leaks that he was not made aware of began to develop as snow on the roof melted rendering portions of the building unusable. (Tr. 93.) Given Midkiff's admission, it is entirely reasonable that Kostoglou was entitled to some rent. The most telling proof that Midkiff owes at least some rent to Kostoglou came from Midkiff's own testimony towards the end of the trial:
 "Q On December 22d 2000, I took your deposition. Do you recall that?
"A Yes.
 "Q Do you remember me asking you, and I quote, Do you feel that he is owed any additional rent?
"A I recall you asking that.
"Q Do you recall what your answer was?
 "A I recall we went around about that several times in questions, and I believe I finally answered yes, possibly he is.
 "Q I have a deposition in front of me. I'm going to read my question and your answer, and you tell me whether that's accurate or not.
"A Fair enough.
 "Q My question was, Do you feel that he is owed any additional rent? Your answer was, Yes?
"A I believe I just answered that again.
"Q Answer it again, please.
 "A Yes, I believe he may be owed some rent." (Tr. 111-112.)
The evidence adduced at trial established that Midkiff breached his duty, at least in part, to pay Kostoglou rent. Likewise, the evidence also established that Kostoglou breached the lease by failing to address the additional leaks that developed in the building. This presents the question of what measure of damages should be applied.
There are two bodies of law that could potentially apply to a residential lease agreement. R.C. Chapter 5321, the Landlords and Tenants Act, generally governs the obligations and remedies of parties to rental agreements and leases of residential premises in Ohio. See Shroades v.Rental Homes, Inc. (1981), 68 Ohio St.2d 20, 21-22; Allstate Ins. Co.v. Dorsey (1988), 46 Ohio App.3d 66, 68. However, R.C. 5321.06, governing rental agreement terms, states:
"A landlord and a tenant may include in a rental agreement any terms and conditions, including any term relating to rent, the duration of an agreement, and any other provisions governing the rights and obligations of the parties that are not inconsistent with or prohibited by Chapter 5321. of the Revised Code or any other rule of law."
In addition, the Ohio Supreme Court has noted that leases are treated as contracts and has also imposed contractual remedies for breach thereof. See U.S. Correction Corp. v. Ohio Dept. of Indus. Relations
(1995), 73 Ohio St. 210, 216; F. Enterprise, Inc. v. Kentucky FriedChicken Corp. (1976), 47 Ohio St.2d 154. Therefore, to the extent that the terms of a residential lease agreement do not conflict with R.C. Chapter 5321 and the body of case law interpreting and applying that legislation, general principles of contract law could be applied to address the remedies or damages available for the breach of a residential lease agreement.
When R.C. Chapter 5321 does not provide for a statutorily defined measure of damages for a particular breach, courts have turned to general principles concerning breach of contract. For example, in Howard v. Simon
(1984), 18 Ohio App.3d 14, 16-17, the Eighth District Court of Appeals, in a case involving the breach of a covenant of quiet enjoyment, stated as follows with respect to the applicable measure of damages:
"Damages awarded for a breach of a covenant of quiet enjoyment should fully and adequately compensate the tenant for the losses he has sustained. Woolworth Co. v. Russo (App. 1933), 16 Ohio Law Abs. 307, 310. Ohio law is unsettled how this measure should be applied. The Ohio Supreme Court has allowed a tenant whose covenant has been breached to recover all rent paid during the period when a landlord's action has taken away a part of the privileges leased to him. Frankel v. Steman
[(1915) 92 Ohio St. 197] . Later cases have measured damages more conservatively, awarding the difference between the rent paid and the actual value received. Woolworth Co. v. Russo, supra, at 310. The latter measure is substantially the same as the measure for either a breach of duty set forth in a lease or a statutory duty. Glyco v. Schultz (1972),35 Ohio Misc. 25, 289 N.E.2d 919 [62 O.O.2d 459]. Cf. Laster v. Bowman
(1977), 52 Ohio App.2d 379, 370 N.E.2d 767 [6 O.O.3d 428], but, see,Shroades v. Rental Homes, Inc., supra." (Second and third brackets in original.)
In a similar case, the Fourth District Court of Appeals noted:
"R.C. Chapter 5321 does not include a statutorily defined measure of damages for the breach of an express covenant in a lease by a lessor. However, the great weight of modern legal authority appears to hold that the applicable standard for damages against a lessor or landlord for the breach of a lease is the reduced rental value of the property, special damages which naturally and directly result from the breach, including loss of profits, and, in the case of a malicious breach, exemplary damages may be awarded. 51C C.J.S. (1968), Landlord Tenant Section 247(a)(F), p. 642; 49 Am.Jur.2d (1970), Landlord and Tenant Section 187; 11 Williston on Contracts (1968), Section 1404, p. 562; 3 McDermott, Ohio Real Property Law (1966), Section 18-14A; see also Restatement of the Law, Property Second (1977), Landlord and Tenant Sections 7.1, 102, and 11.1; Thomas v. Amoco Oil Co. (La.App. 1984), 455 So.2d 1187; Piggy ParkEnterprises, Inc. v. Schofield (S.C. 1968), 162 S.E.2d 705. The `reduced rental value' as applicable to the breach herein, would be the diminution in value of the rental property, i.e. the $160.00 rental price minus the value of the rental property without the refrigerator and the stove. See, e.g. Williston, supra, 51C C.J.S. (1968), Landlord Tenant Section 247(2)(F), p. 643; Cf, also Annotation, Measure of Damages for Landlord's Breach of Implied Warranty of Habitability, 1 ALR 4th 1182." Vanderpoolv. Waddell (Nov 12, 1987), Lawrence App. No. 1822, unreported, 1987 WL 19853 at *3.
As indicated earlier, commercial leases are governed primarily by contract law. Since in the context of residential leases there is no statutorily defined measure of damages for a particular breach and courts have turned to general breach of contract principles, it would seem appropriate to borrow from those principles as applied to a residential lease. Given the terms that can be inferred from the oral lease agreement in this case, we find that the "reduced rental value" is the most reasonable and fairest measure of damages.
Accordingly, Kostoglou's first assignment of error is with merit.
Kostoglou's second assignment of error states:
 "The Trial Court abused its discretion and committed prejudicial error by overruling Appellant's objection and admitting irrelevant and prejudicial testimony regarding tax liens into evidence."
At trial, Midkiff's attorney elicited testimony from Kostoglou that he owed back due real estate taxes on some of the buildings he owned including the one rented by Midkiff. Kostogolou argues that that evidence was irrelevant to the issues presented at trial.
A trial court has broad discretion in the admission of evidence and its decision will not be overturned absent an abuse of discretion. Metaullics Sys. Co. L.P. v.Molten Metal Equip. Innovations, Inc. (1996),110 Ohio App.3d 367, 372. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Tracy v. Merrell DowPharmaceuticals, Inc. (1991), 58 Ohio St.3d 147, 152.
"`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Evidence which is not relevant is not admissible." Evid.R. 402. "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).
Evidence concerning back due real estate taxes or tax liens on the subject property was relevant. In a document dated September 12, 1996, Kostoglou agreed, in exchange for $1,950 in back due rent from Midkiff, to either sell the premises to Midkiff or make plans to repair a list of problems Midkiff was allegedly having with the premises. Knowledge of a tax lien on the property called into doubt Kostoglou's ability to sell the building to Midkiff, therefore, making it relevant. Consequently, the trial court did not abuse its discretion in allowing the testimony.
Accordingly, Kostoglou's second assignment of error is without merit.
The judgment of the trial court is hereby reversed and this cause is remanded for a determination and application of a "reduced rental value" measure of damages.[1]
Vukovich, J., concurs
DeGenaro, J., concurs
[1] At trial, Midkiff chose not to present any evidence in support of his counterclaims. Consequently, the trial court, in its January 12, 2001 Judgment Entry, dismissed Midkiff's counterclaims for failure to prosecute. Midkiff did not appeal the court's decision and, therefore, those claims are now barred under the doctrine of res judicata. Ameigh v. Baycliffs Corp. (1998), 81 Ohio St.3d 247, 256.