WARD, Judge.
Wilton Thomas sued Amoco Oil Company for breach of a contract for the lease of an Amoco service station in New Orleans. The Trial Judge held that Amoco breached the lease by converting the automobile repair and gasoline service station leased to Thomas into a self-service “pumper” station with no repair service bays. The Trial Judge rejected Amoco’s reconventional demand for reformation of the lease and held Amoco liable to Thomas for special damages of $75,524.00, exemplary damages of $50,000.00, and Thomas’ attorney’s fees of $25,000.00. Amoco has appealed, alleging that the Trial Judge erred in his findings of fact, application of the law and awarding of damages.
Wilton Thomas had been an authorized Amoco service station dealer since 1971. He leased from Amoco on a year-to-year basis a service station at 2025 Gentilly Boulevard where he sold Amoco gasoline, while deriving a substantial portion of his income from automotive maintenance and repair work which he performed in the two service bays of the station.
During the latter part of 1977, Amoco determined that it would be profitable and feasible to remodel Thomas’ station, converting it into a self-service gasoline pumping operation with a small snack, cigarette, and beverage store on the side. The physical layout of the proposed modifications required closing the repair service bays. Amoco representatives called on Thomas and explained Amoco’s plans, telling him that if he wanted to remain an Amoco *1190 dealer he would have to agree to the modification of the station. On March 13, 1978, Thomas signed a “dealer consent letter” authorizing Amoco to enter the leased premises and make the alterations converting it to a gasoline pumper station.
Soon after granting Amoco permission to convert the station, Thomas changed the gasoline pumps on one side of the station to self-service. Since the repair bays of the station were going to be closed, Thomas took a seven year lease on a garage on North Claiborne Avenue, hoping to continue his auto maintenance and repair business there as an “annex” to the Gentilly Boulevard station. However, business at the North Claiborne location failed to materialize.
On June 2, 1978, Thomas and Amoco representatives signed a “Lease Rider” reiterating Thomas’ permission for Amoco “to enter upon the demised premises for the purposes of accomplishing contemplated improvements” and providing that during the construction period rent payments could be reduced by the execution of a separate lease rider, and further providing for increased rent of $600.00 per month upon completion of improvements effective January 1, 1979.
On June 26, 1978, Thomas executed a renewal of his annual lease to run from June 30, 1978 through June 29, 1979. Except for the rent which was raised from $299.00 to $463.00 per month, the agreement contained terms identical to those of previous leases, including an equipment rider under which Amoco leased to Thomas the two service bays, including an automobile lift, an air compressor, a greasing assembly and other mechanical equipment. It is this 1978-79 lease which Thomas contends was breached by Amoco.
The station was remodeled during the final three months of 1978. Although Thomas did not resume operation of the business upon completion of the remodeling, he refused to sign a mutual lease cancellation agreement offered by Amoco. On January 30, 1979 Thomas filed this suit against Amoco, seeking damages for breach of lease.
In rendering judgment for Thomas, the Trial Judge found that Amoco acted in bad faith and violated the Service Station Dealers Day in Court Law, La.R.S. 51:1451-55, as well as the Petroleum Marketing Practices Act, 15 U.S.C. Sections 2801-2806. Although Thomas did not plead either statute, the Trial Judge, held that no technical forms of pleading are required in Louisiana and that the court could conform the pleadings to the facts. The Trial Judge then awarded Thomas exemplary damages because they are expressly permitted by the federal statute, although not allowed under Louisiana law.
In its appeal, Amoco makes 17 assignments of error which may be condensed into eight issues. It contends: 1) the Trial Judge erred in excluding from evidence certain documents executed by the parties and Thomas’ deposition taken by Amoco; 2) the Petroleum Marketing Practices Act (PMPA) and the Service Station Dealers Day in Court Law are inapplicable to this case; 3) alternatively, even if the PMPA has been violated, its provisions bar the cause of action under state law; 4) Amoco is not liable for exemplary damages and attorney’s fees, although they may be authorized by the PMPA; 5) the lease was not breached because it authorized modification of the station without the lessee’s consent; 6) Thomas expressly consented to the modification and is therefore estopped from claiming breach of the lease; 7) Thomas is not entitled to damages attributable to the time period beyond the primary term of the lease; and 8) Thomas is not entitled to special damages which were not pleaded or proven.
Before considering other issues, we reverse the Trial Judge’s rulings excluding evidence, because we believe he erred when he refused to consider the deposition of Thomas and the lease rider signed by him. We, therefore, have considered in this appeal as admissible evidence the following documents which were proffered by Amoco:
*1191 The deposition of the plaintiff, Wilton Thomas, was admissible as the deposition of a party, pursuant to La.C.C.P. art. 1450(2).
The June 2, 1978 Lease Rider was admissible as relevant to the interpretation of other agreements between the parties. La.C.C. art. 1949.
Amoco also proffered a document entitled Application for Rent Adjustment, dated December 5, 1978, which purports to be Thomas’ exercise of rights under the June 2, 1978 Lease Rider. The Trial Judge excluded the Application for Rent Adjustment from evidence, finding by his own comparison of handwriting that Thomas’ signature on it likely was a forgery. This document has little relevance and hence, we make no determination concerning its admissibility.
Also, before considering whether Amoco breached the terms of the lease agreement, we reverse the Trial Judge’s finding that the Petroleum Marketing Practices Act and the Service Station Dealers Day in Court Law are applicable in this case. These statutes apply only to a refiner/franchisor who cancels, terminates, or who refuses to renew a franchise agreement, while Amoco neither cancelled, terminated, nor refused to renew the lease agreement with Thomas. On the contrary, Amoco renewed the lease for 1978-79 and it was willing to have Thomas continue as lessee in the operation of the remodeled station. After the lease was renewed, Amoco offered a mutual cancellation agreement, an exception under the PMPA, only because Thomas was unwilling to continue operation of the station. Apparently Thomas did not think Amoco had cancelled, terminated, or refused to renew the lease because he did not cite either statute in his petition, but rather sued on the lease agreement. Under these circumstances, we. hold neither the PMPA nor the Service Station Dealers Day in Court Law has been violated. Having found neither statute applicable, we hold Thomas not entitled to either exemplary damages or attorney’s fees provided by those statutes.
Amoco next contends that the lease was not breached because the lease authorized modification of the station without the lessee’s consent and that this right is given to Amoco by Paragraph 9(g) of the lease:
Lessor reserves the right to modify, rebuild or rehabilitate the premises at any time during the term of this lease; Lessor will give Lessee sixty (60) days notice of its intent to do so. Upon completion of the modification, rebuild or rehabilitation of the premises, the rental rate shall be adjusted to conform to the Lessor’s prevailing rate in effect for the particular size and type of facility in the market.
Thomas contends that Paragraph 14 controls:
None of the provisions of this lease shall be construed as reserving to Lessor any right to exercise any control over the business or operations of Lessee conducted upon the leased premises or to direct the manner in which any such business or operations shall be conducted, it being understood and agreed that so long as Lessee shall use said premises in a lawful manner as herein provided, the entire control and direction of such activities shall be and remain with Lessee.
Following Civil Code Article 1955 and reading these paragraphs in pari materia, giving to each the sense that results from the entire lease, we find Amoco’s right to “modify, rebuild or rehabilitate the premises” limited by the lessee’s right to control and direct the manner of conduct of the “business or operations.” If Paragraph 9(g) gives Amoco the unfettered right to modify the premises, the very nature of Thomas’ business may be changed, and the right of operation given by Paragraph 14 is meaningless. Consequently, we believe Paragraph 9(g) must be read to give Amoco the right to modify the premises, but only if modification does not substantially change the nature of the operation of the business during the existence of the lease. In the instant case, we hold that the right to modify or rebuild the premises granted *1192 Amoco in Paragraph 9(g) did not authorize conversion of an automobile repair and full-service gasoline station into a self-serve pumper station, beverage and snack store. Amoco breached the terms of the lease.
Amoco argues that even if the lease was breached, Thomas is estopped from seeking damages since he expressly consented to the rebuilding and conversion of the station by executing the Dealer Consent Letter and the June 2, 1978 Lease Rider.
To reiterate the chronology of agreements between the parties: on March 13, 1978 Thomas signed the Dealer Consent Letter; on June 2, 1978, Thomas and Amoco both approved the Lease Rider; on June 26, 1978, the 1978-79 lease was signed by Thomas and Amoco; and in October through December 1978 Amoco entered the premises and remodeled the station.
The 1978-79 lease made no reference to the Dealer Consent Letter or the June second Lease Rider which were executed during the term of the prior lease. Paragraph 17 of the 1978-79 lease states: “No obligation, agreement or understanding shall be implied from any of the terms and provisions of this lease, all obligations, agreements and understandings with respect to the leased premises being expressly set forth herein.” Additionally, the 1978-79 lease says in paragraph 6, the “premises shall be devoted solely to the operation thereon of a gasoline service station and the handling, storage and dispensing thereon and therefrom of motor fuels, motor oils and grease and other petroleum products and such other products and services (including vehicle towing) as are customarily handled, sold and distributed at a gasoline service station.” The lease did not say that operations were limited to a self-service station and snack store, nor did it authorize the sale of products not associated with a service station, such as beverages, snacks or cigarettes. Moreover, in a rider attached to the lease, Thomas again leased from Amoco the two service bays and the equipment that had been used in the automobile repair service operations.
Thomas testified that at the time the new lease was executed, he noted that it was virtually identical to the old 1977-78 lease and that the Amoco agent told him that “it looked like everything may be okay”. Thomas says he believed the new lease gave him at least one more year of operation as a full service station with two bays for automobile repairs.
We believe Amoco is bound by the terms of the 1978-79 lease agreement, and that it cannot now say that because Thomas agreed to modifications under the 1977-78 lease agreement that Thomas also agreed to modifications under the 1978-79 lease.
Consequently, we hold that Amoco breached the June 26, 1978 lease and Wilton Thomas is not estopped from seeking damages.
The general rule is that a lessee may recover damages for the value, at the time of the breach, of the unexpired term of the lease, less the agreed-upon rent, and for special damages that result from the breach. La.C.C. art. 2696; 52 C.J.S. Landlord and Tenant, § 461(4).
The Trial Judge awarded damages for the following items:
Loss of leasehold interest $ 27,780.00
Reimbursement for loss of equipment 6,259.00
Loss of good will 7,000.00
Reimbursement for loss of inventory 2,785.00
Reimbursement of insurance premium 1,700.00
Loss of future income 30,000.00
Total Special Damages: $ 75,524.00
Exemplary Damages 50,000,00
TOTAL SPECIAL & EXEMPLARY DAMAGES: $125,524.00
Attorneys fees 25,000.00
TOTAL $150,524.00
We do not believe Thomas is entitled to all damages awarded. We agree with Amoco’s contention that there is no basis for an award of amounts attributable to any period beyond the primary term of the lease agreement, that is, beyond June 29, 1979. Hinrichs v. Tulane Education Fund, 49 La.Ann. 1029, 22 So. 96 (1897).
*1193 Thomas claimed lost income for three periods: from October 1978 to January 1979, the date of filing the lawsuit; future loss of income to June 1979, the date of expiration of the lease; and estimated future loss of income. However, damages should be awarded only for the period commencing October 1, 1978, when Amoco breached the lease, until the lease would have expired on June 29, 1979. Thomas proved he realized a net profit from the service station of $8,848.00 for the nine months during 1978 in which he operated the station. Hence, we find an award of $8,848.00 reasonable compensation for loss of income during the nine months from October 1, 1978 through June 29, 1979.
We also find that the Trial Judge erred in granting Thomas damages to reimburse the $1,700.00 insurance premium he paid for coverage of the leased premises, because the insurance premium was an operating expense deducted from gross profits to calculate net income. Consequently, we cannot award damages for loss of income while also reimbursing Thomas for insurance premiums which he would have had to pay in order to earn those profits.
For the same reason, we find reimbursement for loss of inventory inconsistent with an award for loss of income. The cost of goods in inventory must be subtracted from gross receipts to calculate net profit or income. Hence, Thomas cannot be reimbursed for the inventory he had to acquire to earn profits since he has been given damages for loss of income.
We also reverse the award of $27,780.00 for the loss of the leasehold interest. The value of a leasehold interest is measured by the difference between the rent which would have been paid by the lessee and the fair rental value of the property. The fair rental value of leased property is usually determined by proof of the amount of rent the lessor receives from the party who leases the premises after the breach, although it may be proved by expert testimony or evidence of rental values of comparable property. See Major v. Hall, 286 So.2d 486 (La.App. 1st Cir.1973) writ denied 288 So.2d 647 (La.1974). Thomas failed to offer proof that the lease had any value above what he would have been obligated to pay in rent to Amoco. Hence, no damages can be awarded for loss of the leasehold interest.
We further hold that the Trial Judge erred in awarding damages for loss of good will caused by the breach since Thomas neither pleaded nor proved such a loss. The good will of a business is an intangible asset, the loss of which must be specifically alleged by a plaintiff as an item of special damages before there may be proof and recovery upon the loss. La.C.C.P. art. 861. See Major v. Hall, 286 So.2d 486. None of the pleadings filed by Thomas alleged loss of good will, and he did not attempt to introduce evidence of its value. Hence, we find no basis for damages for loss of it and reverse the $7,000.00 awarded for loss of good will.
We also find error in the award of $6,259.00 compensating Thomas for loss of equipment he had used in the Amoco station. The equipment was not lost. Rather, Thomas testified that some of the equipment was stored at his house and some had been taken to his'new business location on North Claiborne. Hence, there is no com-pensable loss.
As noted previously, the awards of exemplary damages and attorney’s fees must be reversed since they were based upon provisions of the Petroleum Marketing Practices Act and the Louisiana Service Station Dealers Day in Court Law, which we hold inapplicable in this case.
For the reasons stated, the judgment of the Trial Court is amended to reduce the amount of the award to $8,848.00, and as amended, the judgment is affirmed. Since it breached the lease, costs of the appeal are to be paid by Amoco.
AMENDED AND AFFIRMED.