HOWARD, APPELLANT, *v.*
SIMON, APPELLEE.

(No. 47640—Decided June 25, 1984.)

*John A. Howard, pro se.*
*John H. Lawson,* for appellee.

NAHRA, J. This is an appeal and cross-appeal from a bench trial verdict in Shaker Heights Municipal Court. The controversy arose out of the parties' landlord-tenant relationship. The following facts gave rise to the appeal.

The plaintiff-appellant (cross-appellee), John A. Howard, rented an apartment to the defendant-appellee (cross-appellant), Steven Simon, which was advertised "with air." The parties signed a written lease with a one-year term commencing September 1, 1980. Simon stayed on from September 1981 through August 26, 1982 under a month-to-month arrangement.

Howard had a practice of turning off the cooling unit on the air conditioner when he felt the weather was cool enough. This resulted in forty to fifty complaints by Simon during the two summers of his tenancy.

July 1, 1982 was a mild day. The outdoor temperature was 71°F with a relative humidity of forty-four percent. However, Simon's apartment was 84°F. He requested Howard to turn the cooling unit on. He repeated this request a half hour later.

This request was made face-to-face and during it Simon lost his temper. He shouted his request and used "dirty" words. Howard told him he was offended by this conduct and additionally he (Howard) was worried that this behavior might lead to violence.

Two hours after the incident, Simon received a thirty-day notice terminating his tenancy August 1, 1982. A three-day notice of intent to file a forcible entry and detainer action pursuant to R.C. Chapter 1923 was delivered on July 27, 1982. The action was filed August 2, 1982 in Shaker Heights Municipal Court. Simon answered and filed four counterclaims.

The eviction action was settled on August 12, 1982 with Simon agreeing to vacate by the end of August. A journal entry was filed which stated that "* * * [a]ny finding herein is not applicable to any other rights of the defendant [Simon] * * *."

Trial of the four counterclaims was held July 26, 1983. The judge found against Simon on counterclaims one and two and awarded $860 on the remaining claims.

Howard filed a timely appeal with respect to the decision on counterclaims three and four. Simon cross-appealed with respect to the decision on counterclaims one and two.

I

Howard's first assignment of error is that:

"The findings and ruling of the trial court was [*sic*] against the weight of the evidence."

Howard contends that the trial court erred in finding that he breached his duty as landlord under R.C. 5321.04 and that he breached the covenant for peaceful and quiet enjoyment. He essentially argues that he need only provide air conditioning when the outside temperature rises above 75°F. R.C. 5321.04(A)(4) imposes an affirmative duty on a landlord to:

"Maintain in good and safe working order and condition all * * * air conditioning fixtures * * * supplied or required to be supplied by him * * *[.]"

Howard argues that factors outside his control resulted in the overheating of Simon's apartment. He reasons that since the temperature was mild outside, he did not have to turn on the cooling unit.

We find no error in the trial court's holding that Howard breached his statutory duty. R.C. Chapter 5321 is remedial and intended to provide

tenants with greater rights. *Shroades* v. *Rental Homes, Inc.* (1981), 68 Ohio St. 2d 20 [22 O.O.3d 152]. The Act would furnish no protection to the tenant if read to merely require the landlord to have a system in working order. An air conditioner which is turned off results in the same uninhabitable conditions as one which is broken. The Act requires the equipment to perform when needed.

Howard relies on standards propounded by the American Society for Heating, Refrigeration, and Air-Conditioning Engineers. These standards show that the ideal temperature for comfort is 75°F. Unrebutted expert testimony established that given the nature of the building's cooling system, the outside temperature would have to be 55°F before it would produce an air temperature in the seventies. Additionally, Simon's apartment faced south and was under a tar roof. These factors resulted in a heat buildup which could not be adequately dissipated by merely opening the windows. The record shows that these factors resulted in temperatures sufficient to cause Simon to complain. The temperature of the apartment on July 1, 1982 was established to be 84°F. The finder of fact did not err in finding that the air conditioning frequently did not perform when needed.

The trial court's holding that Howard breached the covenant of peaceful and quiet enjoyment is also supported by the evidence. The covenant is breached when the landlord " '* * * obstruct[s], interfere[s] with, or take[s] away from the * * * [tenant] in a substantial degree the beneficial use * * *' " of the leasehold. *Frankel* v. *Steman* (1915), 92 Ohio St. 197, 200.

The Supreme Court while upholding a jury verdict based on the jury instruction quoted above held that the substantiality of the impairment is a question for the finder of fact. *Frankel* v. *Steman, supra,* at 199. In the instant case, there was sufficient evidence for the finder of fact to determine that the frequent absence of air conditioning over a two-summer period breached the covenant.

## II

Howard's second and third assignments of error are that:

"The trial court erred in awarding damages of $500 to defendant-appelee [*sic*] on his third counterclaim, for breach of his covenant of peaceful and quiet enjoyment of the premises, and awarding separate damages of $90 per month for four months in 1981 and 1982, on his fourth counterclaim, for failure to receive full value of his rental agreement.

"The trial court erred in awarding substantial monetary damages when no evidence of same was presented at trial."

These assignments present related issues arising out of the measure of damages. Howard argues that the measure of damages for a breach of covenant of peaceful enjoyment and a breach of the lease, and a breach of a statutory duty, are identical. The proposed measurement is the difference between actual value of this apartment with the breach and the rental paid. He contends that the trial court's separate awards of $500 and $360 are in error, for two reasons. The first is that with the same measure of damages applicable to both counts, different awards are illogical. Second, there was inadequate proof to establish the market value of the apartment with intermittent air conditioning.

Damages awarded for a breach of a covenant of quiet enjoyment should fully and adequately compensate the tenant for the losses he has sustained. *Woolworth Co.* v. *Russo* (App. 1933), 16 Ohio Law Abs. 307, 310. Ohio law is unsettled how this measure should be applied. The Ohio Supreme Court has allowed a tenant whose covenant has

been breached to recover all rent paid during the period when a landlord's action has taken away a part of the privileges leased to him. *Frankel* v. *Steman, supra.* Later cases have measured damages more conservatively, awarding the difference between the rent paid and the actual value received. *Woolworth Co.* v. *Russo, supra,* at 310. The latter measure is substantially the same as the measure for either a breach of duty set forth in a lease or a statutory duty. *Glyco* v. *Schultz* (1972), 35 Ohio Misc. 25 [62 O.O.2d 459]. Cf. *Laster* v. *Bowman* (1977), 52 Ohio App. 2d 379 [6 O.O.3d 428], but, see, *Shroades* v. *Rental Homes, Inc., supra.*

The court herein determined the difference in rental value to be $90 a month for four months or a total of $360. Although such damages are impossible to measure with mathematical precision, there was ample evidence to justify this finding by the court. However, the breaches complained of are actually one and the same and the additional $500 in damages is disallowed.

### III

Appellant's fourth assignment of error is that:

"Counsel for defendant-appellee engaged in improper conduct by contacting the court, *ex parte,* while this matter was under consideration by the court, in contravention of the Code of Professional Responsibility."

Howard contends that Simon's counsel's *ex parte* contact with the court, concerning a separate, but related, matter, violates DR 7-110 of the Code of Professional Responsibility.

We find that this assignment is without merit.

Simon's counsel also represented a Janis Harper in a forcible entry and detainer action initiated by Howard. The alleged improper *ex parte* contact occurred when Simon's counsel appeared before the trial court to request a temporary restraining order based on R.C. 5321.02 for *Harper's* benefit.

DR 7-110 forbids *ex parte* communication concerning the merits of the case. Howard does not allege that the merits of the case were discussed. He specifically does not charge that this conduct led to a different result. He proposes a gloss on the rule which would enact a presumption of wrongdoing.

The code does not limit a lawyer to only one client. An attorney practicing in a limited area is likely to have related cases before the same bench. This gloss makes improper an otherwise proper contact between an attorney and the court. It would essentially prohibit an attorney from taking on a related case. This result is clearly contrary to the code.

### IV

As cross-appellant, Simon's first assignment of error is that:

"The trial court erred in finding that the eviction was not retaliatory under Revised Code § 5321.02."

Simon argues that the eviction was retaliatory under R.C. 5321.02 because he was making a complaint to the landlord at the time the landlord decided to terminate his lease.

It is undisputed that Simon lost his temper while complaining about the lack of air conditioning. He yelled and swore on this occasion. The landlord immediately told him this was unacceptable and he would have to leave.

However, Simon contends that his complaint is protected by R.C. 5321.02(A)(2). That section provides in relevant part that:

"(A) Subject to section 5321.03 of the Revised Code, a landlord may not retaliate against a tenant by * * * bringing or threatening to bring an action for possession of the tenant's premises because:

"* * *

"(2) The tenant has complained to

the landlord of any violation of section 5321.04 of the Revised Code * * *[.]"

Simon reasons since both parties agree that the eviction grew out of a complaint of a violation of R.C. 5321.04, the eviction was presumptively retaliatory. This construction is neither required by the statute nor supported by the case law. We therefore affirm.

The statute provides that the landlord "may not retaliate" because of a protected complaint. The legislature required by this construction that the finder of fact make an independent determination of the reasons behind the landlord's action. The finder of fact must determine that the landlord is retaliating. If this were otherwise, the statute could have been written using the word "action" in place of the word "retaliate."

This construction is in agreement with *Karas* v. *Floyd* (1981), 2 Ohio App. 3d 4, where the court affirmed a trial court's finding of retaliatory eviction. The court rejected the trial court's interpretation that close proximity between the time of the complaint and the eviction raised a presumption of retaliation. Instead, the court required a showing by a preponderance of the evidence of the relationship between the complaint and the eviction.

In the instant case, the trial court heard unrebutted evidence that the tenant's complaint was lodged in an obnoxious manner. The landlord immediately told the tenant that he found this conduct unacceptable and dangerous; and the landlord had previously received forty to fifty complaints from the tenant without retaliating.

The finder of fact was within his purview in finding that the landlord's action was not retaliatory.

## V

Cross-appellant Simon's second assignment of error is that:

"The trial court erred against the weight of the evidence in computing the loss of value of the rental agreement in counterclaim four."

This appeal grows directly out of the ambiguous wording of the trial court's award:

"* * * [T]he Court finds the reasonable loss of value to be $90.00 per month for each of the four months during 1981 and 1982 that defendant occupied the premises."

This passage can be read to be an award of $90 for two months of each year of the two-year period in question or for four months each summer. Simon contends the latter construction is the correct one. We do not agree.

The apparent ambiguity disappears when the award is read in context. The trial court obviously intended the former. Its award of $360 equals a $90 award for two months in each summer. This interpretation is also implicit in the court's findings. The trial court's award is affirmed.

## VI

The cross-appellant's final assignment of error is that:

"The trial court erred in denying counterclaim two on insufficient grounds thus denying due process of law."

Simon contends that the trial court failed to consider the merits of his second counterclaim. This claim alleged:

"(14) Plaintiff has initiated the action at bar for the purposes of recovering possession of the premises by means other than those provided in Chapters 1923, 5303 and 5321 of the Ohio Revised Code."

The requested relief is an award for mental anguish.

We affirm the trial court's dismissal of this claim. The claim arising out of the landlord's use of R.C. Chapter 1923 was mooted by the settlement of the eviction action. Assuming that Simon's reference to R.C. Chapter 5321 refers back to

his claim of retaliatory eviction, the trial court's holding that there was no retaliatory eviction resolves this ground.

The remaining reference to R.C. Chapter 5303 lacks specificity. The claim fails to specify which section of this chapter Howard allegedly violated.

The judgment of the trial court is hereby affirmed as modified.

*Judgment affirmed as modified.*

MARKUS, P.J., and JACKSON, J., concur.