DECISION. *Page 2 
{¶ 1} This is a residential landlord-tenant dispute. A tenant was unable to get repairs to his home. He began depositing his rent with the municipal court. The landlord sued for release of the escrowed funds, claiming that the tenant was not current on his rent and was not eligible for escrow. Questions were raised by the tenant about whether the landlord actually owned the property. Even after a court order to do so, the landlord failed to make repairs. Thus the court abated one-half the rent paid by the tenant.
 {¶ 2} The landlord appeals, claiming that the trial court failed to consider the back-rent claim, wrongly focused on the ownership issue, and improperly reduced the tenant's rent. The landlord's claims are meritless, and we affirm the trial court's judgment.
 I. Smith Asks for Repairs {¶ 3} Charles D. Smith, II, the defendant-appellee, had been renting unit five of the Sur La Mont Condominiums in the Westwood neighborhood of Cincinnati for five years when Al Gammarino, the plaintiff-appellant, presented himself as the new owner of the property. At that time, in 2001, Smith claimed that he told Gammarino the unit's air conditioner was broken.
 {¶ 4} In June 2005, Gammarino wrote Smith a letter to inform him that in August the monthly rent would increase from $480 to $525. Gammarino acknowledged in this letter that there was no written lease. Smith appears to have been renting the property on a month-to-month tenancy. *Page 3 
 {¶ 5} Immediately after receiving Gammarino's letter, Smith responded in kind, reiterating that the air conditioner was still broken after three summers. Smith's letter asked Gammarino to repair the air conditioner and several kitchen items including the following: a noisy garbage disposal, a leaky ceiling, a cracked lazy susan in the cabinets, a defective seal on the refrigerator door, and a short-circuiting light fixture. He informed Gammarino that he would begin paying his rent into a court escrow account until the repairs were made. In August, Smith filed the necessary papers and began depositing his rent with the Hamilton County Municipal Court.
 {¶ 6} Smith appeared pro se through most of the municipal court proceedings but later retained counsel. Gammarino appeared pro se for all of the trial court's proceedings.
 {¶ 7} Gammarino requested that the court release the escrowed rent payments to him. The case was continued several times. Smith continued paying his rent to the court for nine months. Gammarino challenged Smith's ability to escrow his rent on the ground that Smith was not current in his payments when he began escrowing. Gammarino claimed that a rent check in October 2002 had bounced. Smith said that he immediately had made good on the payment with a money order that Gammarino accepted. Smith claimed that Gammarino never mentioned the bounced check again until three years later when Gammarino referred to it in this case.
 {¶ 8} Smith also questioned Gammarino's standing because it appeared from public records that Samuel Yi, not Gammarino, was the titled owner of record. Yi was served with notice both in the trial court and on appeal, and has neither appeared nor made any filings in either court. *Page 4 
 {¶ 9} At a hearing in the trial court, Gammarino tried to explain how he owned the property even though Hamilton County records — a printout from the website of the Hamilton County Auditor was submitted as evidence — indicated that Samuel Yi was the owner of record. Gammarino presented documents in support of his claim, which we use in constructing the following account.
 {¶ 10} The property was sold in August 1997 by the sheriff in a foreclosure proceeding brought by the Hamilton County Treasurer.[1] Yi was the winning bidder at the sheriff's sale. The day after the auction, Yi assigned his bid to Gammarino. That assignment was filed in the court of common pleas ten days later. Gammarino claimed that there was an error when the court prepared the deed because Yi's name was listed as the grantee. This deed was recorded.[2]
 {¶ 11} Gammarino claimed that he paid several years of property taxes on the condominium. He presented tax bills for the first halves of 1999, 2003, and 2004, as well as the second half of 2004. They were marked paid by the Hamilton County Treasurer. The bills listed Yi as the owner. They did not mention Gammarino and did not indicate who — Yi, Gammarino, or someone else — had actually made the payments, only that they were made.
 {¶ 12} Gammarino also presented the trial court with an unrecorded deed from Yi dated October 13, 2005, two months after Smith began escrowing his rent, granting Gammarino the property. When the case came before the trial court, Gammarino was unable to explain why the deed had not been recorded.
 {¶ 13} Several things are unclear to us. We do not know from whom Smith originally rented his condominium. We do not know who received the rent between *Page 5 
1997, the time of the sheriffs sale, and 2001, when Gammarino presented himself to Smith. We are also unsure why Gammarino did not seek to correct the erroneous deed until after these proceedings began, eight years after the incorrect deed was recorded, or why, once he had obtained a deed from Yi, Gammarino failed to record it.
 {¶ 14} In April 2006, a magistrate ordered Gammarino to repair the air conditioner and abated half of Smith's rent. The magistrate also ordered that half the escrowed funds be returned to Smith, and that the remaining half be withheld pending a determination who owned the condominium. The trial court approved the magistrate's recommendations without comment.
 {¶ 15} Gammarino advances the following assignments of error: (1) that the trial court failed to determine if Smith was current on his rent, which governed his ability under state law to escrow his rent; (2) that the defects Smith complained of were not serious enough to warrant a 50% abatement of his rent; and (3) that the court improperly rejected Gammarino's assignment of bid as sufficient evidence of his ownership of the condominium.
 II. The Standard of Review {¶ 16} A judgment supported by competent, credible evidence going to all the essential elements of the case will not be overturned as being against the manifest weight of the evidence, as we presume that the trial court was correct because the court was in the best position to assess the witnesses and their testimony.[3] "[N]o court of *Page 6 
review is permitted upon appeal on questions of law to weigh evidence and to substitute its judgment as to conclusions of fact for that of the trier of the facts."[4]
 III. Duties and Rights {¶ 17} R.C. Chapter 5321, enacted in 1974, is Ohio's Landlord-Tenant Act. Several provisions of it are central to this case.
 {¶ 18} Under R.C. 5321.04, landlords must (1) comply with health and safety laws, (2) maintain their properties "in a fit and habitable condition," and (3) "maintain in safe working order and condition all electrical, plumbing, * * * and air conditioning fixtures and appliances."
 {¶ 19} A tenant may escrow rent with the municipal court when (1) the landlord fails to abide by R.C. 5321.04, the rental agreement, or local health and safety laws; (2) the tenant notifies the landlord in writing of the defects in his property; and (3) the landlord fails to remedy the defects within the sooner of "a reasonable time" or 30 days.[5]
 {¶ 20} And the landlord may apply to the court for the release of the escrowed rent if (1) the defects have been remedied, (2) the tenant was not current on his rent when he began escrowing rent, or (3) there was no violation of R.C. 5321.04, the rental agreement, or local health and safety laws.[6] The Sixth Circuit has upheld the constitutionality of this statutory scheme.[7] *Page 7 
 IV. Amplifying the Silent Record {¶ 21} Gammarino claims that Smith was not current on his rent payments and thus was not entitled to escrow his rent. Gammarino claims that the trial court erred by failing to determine if Smith was eligible to escrow because the court's order was silent on this issue.
 {¶ 22} Tenants must be current in their rent payments to take advantage of the escrow statute.[8] Gammarino tells us that it is "fundamental" that courts speak only through their journals and that we should not address on appeal issues not decided by the trial court.[9]
But a silent record does not necessarily mean that a trial court did not consider an issue.[10] "On appeal on questions of law, all reasonable presumptions consistent with the record will be indulged in favor of the validity of the judgment under review and of the regularity and legality of the proceeding below."[11]
 {¶ 23} Gammarino claimed that in October 2002 Smith had paid his rent with a check that bounced. He presented as evidence a copy of that check. Smith claimed that (1) he immediately sent Gammarino a money order to replace the bounced check, (2) Gammarino accepted the money order, and (3) Gammarino did not raise the issue again until after these proceedings began, nearly three years later.
 {¶ 24} Gammarino has not attempted in any way to refute Smith's claim that he made good on his rent back in 2002. He failed to offer additional evidence that Smith was behind on his rent, or that at any time in the 33 months between the bounced check and the start of these proceedings, he tried to collect this supposedly past-due amount. *Page 8 
If Smith had been behind on his rent, we would expect to see efforts to collect the money. We have nothing but Gammarino's unsubstantiated claim, which he faults the trial court for not properly considering.
 {¶ 25} The magistrate's findings describe at length the statutory obligations under R.C. Chapter 5321. We think it logical that, in examining the escrow statute, the trial court considered Smith's duty to be current on his rent; and having found that he was, the court correctly allowed Smith to continue his escrow payments for nine months and entered judgment in favor of Smith. If it believed that Smith was not eligible to escrow, it would have done neither.
 {¶ 26} The trial court adopted without comment the magistrate's findings, which did not address the issue of Smith's back rent. The trial-court opinions that come before us regularly omit any number of issues the parties raised in their pleadings. Because of their crowded dockets, trial courts quite rationally spend little time in their judgments discussing the obvious or shooting down completely meritless issues raised in pleadings. If we were obligated to reverse a trial court every time a judgment was silent on some question in the pleadings, all our opinions would close with "Judgment reversed and cause remanded."
 {¶ 27} We presume the validity of judgments when there is reasonable evidence to support them. The paucity of Gammarino's evidence and common sense tell us that the trial court had good reason for ignoring his back-rent claim. The first assignment of error is overruled.
 V. The Abated Rent {¶ 28} Gammarino faults the trial court for reducing Smith's rent to compensate him for the repairs Gammarino had failed to make. He objects that (1) *Page 9 
the court abated the rent sua sponte; (2) the amount of the reduction was calculated without hearing evidence about the actual amount of Smith's damages; and (3) the amount of the reduction was excessive. We address Gammarino's objections in turn.
 {¶ 29} Abatement of rent to sanction landlords is a well-established principle.[12] "[A] tenant is entitled to an abatement of the rent only so long as the landlord continues in default."[13] When a commercial landlord's acts keep his tenant from the enjoyment of a leasehold estate, damages are the difference between the contracted rent and what the market-value rent for the defective premises would be.[14] This is also true for residential leases.[15] "If the tenant is entitled to an abatement of the rent, the rent is abated to the amount of that proportion of the rent which the fair rental value after the event giving the right to abate bears to the fair rental value before the event."[16]
 {¶ 30} Courts have the authority to award damages under R.C. Chapter 5321. In this case, the court heard Smith's troubles in getting Gammarino to make repairs even after Gammarino was ordered by the court to make them. It was well within the court's powers to award damages on its own motion.
 {¶ 31} Gammarino claims that the trial court had no basis to make its award when it failed to take "evidence as to the diminution of value caused by" his failure to make repairs. R.C. Chapter 5321 fails to define how to calculate damages for *Page 10 
statutory violations.[17] This is a problem common across America, and courts have used several methods to determine the proper amount for rent abatements.[18]
 {¶ 32} Expert testimony is not necessary to determine the amount of damages.[19] This is understandable because "expert testimony is not likely to be readily available in this area, assuming indeed that the issue lends itself to any meaningful kind of expert evaluation."[20]
In most residential disputes, the amounts in question are small and the cost of hiring experts would be so daunting that to require their testimony would be to negate the benefit of abatement.[21] In these cases, "the courts must do the best they can."[22]
 {¶ 33} Thus courts may rely on the testimony of tenants because "a lessee of real property is competent to give opinion testimony as to the rental value of the leased premises."[23] The Ohio Supreme Court tells us that "[t]he tenant's undisputed testimony as to the extent of defects, even if not accompanied by the tenant's opinion on the monetary value of the defective property, is sufficient evidence on which to base a damages award. However, the finder of fact (judge or jury) must determine the monetary amount by which the defects and the reduction in use have lessened the value of the leasehold."[24] Courts have often made sizable abatements based on tenants' testimony.[25] *Page 11 
 {¶ 34} Depriving a tenant of air conditioning breaches the landlord's duty under R.C. 5321.04 and warrants damages.[26] Smith had suffered through three summers without air conditioning. No doubt the trial court took judicial notice of the semi-tropical conditions that often prevail during Cincinnati summers in finding that Gammarino had violated R.C.5321.04. Smith presented correspondence with his landlord and testified to the conditions in his home.
 {¶ 35} Smith showed that R.C. 5321.04 was violated when Gammarino failed to address the electrical, plumbing, and cooling issues that Smith had raised with him. Gammarino failed to rebut Smith's evidence, to show that repairs were made, or to offer evidence of the proper measure of damages. The trial court was therefore correct in relying on the parties' evidence to award damages and in determining that a one-half abatement was justified. That reduction would, in our view, have been reasonable just for the lack of air conditioning. The second assignment of error is without merit.
 VI. The Disputed Ownership {¶ 36} Gammarino asks us to conclude that "the trial court erred in holding that the assignment of bid held by Mr. Gammarino was ineffective to demonstrate his ownership of the property." He urges us to consider a case he successfully prosecuted pro se before the Ohio Supreme Court that was also about a dispute arising from his ownership under an unrecorded deed of property acquired after a sheriff's sale.[27] He also cites a case involving an assignment of bid from a sheriffs sale.[28] Neither is relevant here. *Page 12 
 {¶ 37} This was not an action to quiet title. The trial court was not asked to and did not make a ruling on ownership. This was a dispute between a tenant and his landlord. Ownership of the property is irrelevant to this appeal because Smith was harmed by whatever ownership — record, equitable, beneficial, special, naked or otherwise — Gammarino may have had. The trial court determined that Smith had been denied what he was entitled to by law and compensated him accordingly. It retained the balance of the escrowed rent pending a determination whether Gammarino was entitled to it.
 {¶ 38} As Gammarino has reminded us, appellate courts should not settle issues not dealt with at trial. This was not dealt with at trial. We accept his invitation not to rule on such matters. If he believes he is entitled to the balance of the funds in escrow, Gammarino should apply to the trial court and prove to it that he owns the property. We overrule the final assignment of error.
 VII. Judgment Affirmed {¶ 39} Smith was current in his rent. He did what was required of him under the Landlord-Tenant Act to escrow his rent. Gammarino has failed to demonstrate that the trial court erred in entering judgment for Smith. The judgment is accordingly affirmed.
Judgment affirmed.
SUNDERMANN and HENDON, JJ., concur.
[1] Goering v. Plessinger (July 12, 2002), Hamilton Cty. C.P. No. A-9605652.
[2] Hamilton Cty. Deed Records, Book 7498, Page 1357.
[3] Cincinnati ex rel. Cosgrove v. Grogan (2001), 141 Ohio App.3d 733,749, 753 N.E.2d 256, citing C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, paragraph one of the syllabus, andSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
[4] Gates v. Bd. of Edn. of Rivers Local School Dist. (1967),11 Ohio St.2d 83, 87, 228 N.E.2d 298, fn. 4.
[5] R.C. 5321.07.
[6] R.C. 5321.09.
[7] Chernin v. Welchans (C.A.6, 1988), 844 F.2d 322.
[8] R.C. 5321.09.
[9] State ex rel. Indus. Comm. v. Day (1940), 136 Ohio St. 477, 479,26 N.E.2d 1014; Mills-Jennings of Ohio, Inc. v. Liquor ControlComm. (1984), 16 Ohio App.3d 290, 293, 475 N.E.2d 1321.
[10] See State v. Adams (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361, paragraph three of the syllabus.
[11] In re Sublett (1959), 169 Ohio St. 19, 20, 157 N.E.2d 324. See, also, Fletcher v. Fletcher (1994), 68 Ohio St.3d 464, 468,628 N.E.2d 1343; State v. Patterson (1998), 128 Ohio App.3d 174, 178,714 N.E.2d 409.
[12] See, McDaniel v. Mack Realty Co. (1934), 315 Pa. 174, 178,172 A. 97.
[13] Manglona v. Govt. of the Commonwealth of the N. MarianaIslands (N.Mar.I.), 2005 MP 15, paragraph 69, citing ConstellationHolding Corp. v. Beckerman, 42 N.Y.S.2d 143.
[14] Woolworth Co. v. Russo (June 14, 1933), 2nd Dist. Nos. 314 and 319. See, also, Curry Durham, Ohio Real Property Law and Practice 20.17.
[15] Smith v. Padgett (1987), 32 Ohio St.3d 344, 513 N.E.2d 737, paragraph one of the syllabus; Miller v. Ritchie (1989),45 Ohio St.3d 222, 543 N.E.2d 1265, paragraph three of the syllabus; Howard v.Simon (1984), 18 Ohio App.3d 14, 16, 480 N.E.2d 99.
[16] Restatement of the Law 2d, Property (Landlord Tenant) (1977), Section 11.1.
[17] Kostoglou v. Midkiff Enterprises, Inc. (Nov. 6, 2001), 7th Dist. No. 01 C.A. 23.
[18] See Wade v. Jobe (Utah 1991), 818 P.2d 1006, 1012-13; Restatement of the Law 2nd, Property (Landlord Tenant) (1977) Section 11.1 and comments.
[19] Bedell v. Los Zapatistas, Inc. (Colo.App. 1991), 805 P.2d 1198,1200, adopting Restatement Section 11.1.
[20] Morbeth Realty Corp. v. Velez (1973), 73 Misc.2d 996, 1001,343 N.Y.S.2d 406.
[21] See Cazares v. Ortiz (1980), 109 Cal.App.3d 23 (Supp.), 168 Cal.Rptr. 108, 110.
[22] Stoiber v. Honeychuck (1980), 101 Cal.App.3d 903, 915, 162 Cal.Rptr. 194.
[23] Smith v. Padgett (1987), 32 Ohio St.3d 344, 348, 513 N.E.2d 737. See, also, Valigore v. Cuyahoga Cty. Bd. of Revision,105 Ohio St.3d 302, 2005-Ohio-1733, 825 N.E.2d 604, ¶ 5; Cincinnati v. Banks (2001),143 Ohio App.3d 272, 291, 757 N.E.2d 1205; State v. Heap, 1st Dist. No. C-040007, 2004-Ohio-5850, ¶ 21.
[24] See Miller, supra, 45 Ohio St.3d at 227.
[25] See Academy Spires, Inc. v. Brown (1970), 111 N.J.Super. 477,488, 268 A.2d 556; Morbeth, supra.
[26] See Howard, supra, 18 Ohio App.3d at 16.
[27] Gammarino. v. Hamilton Cty. Bd. of Revision, 84 Ohio St.3d 155, 1998-Ohi0-715, 702 N.E.2d 415.
[28] Huntington Natl. Bank v. Shanker (May 17, 2001), 8th Dist. No. 78127. *Page 1