[Cite as *Chiaverini, Inc. v. GraBen, L.L.C.*, 2014-Ohio-3542.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HENRY COUNTY

CHIAVERINI, INC., DBA
THE DIAMOND & GOLD OUTLET,

      PLAINTIFF-APPELLANT,                  CASE NO. 7-13-15

      v.

GRABEN, LLC.,                            O P I N I O N

      DEFENDANT-APPELLEE.

Appeal from Henry County Common Pleas Court
Trial Court No. 12CV0128

Judgment Affirmed

Date of Decision:    August 18, 2014

APPEARANCES:

    *George C. Rogers* **for Appellant**

    *Daniel R. Michel* **for Appellee**

**SHAW, J.**

{¶1} Plaintiff-appellant, Chiaverini, Inc., dba The Diamond & Gold Outlet ("Chiaverini, Inc."), appeals the October 10, 2013 judgment of the Henry County Court of Common Pleas journalizing a jury verdict finding that defendant-appellee, GraBen, LLC ("GraBen") did not breach the commercial lease between the parties. Specifically, the jury found that Chiaverini, Inc. did not prove by a preponderance of the evidence that GraBen failed to maintain and repair the premises under the lease agreement or that GraBen breached the covenant of quiet enjoyment stated in the lease. The jury also found in favor of GraBen on its counterclaim against Chiaverini, Inc. for non-payment of rent but awarded GraBen unpaid rent in the amount of zero dollars.

{¶2} In July of 2007, the parties entered into a lease of commercial property owned by GraBen. The building at issue is over one hundred years old and is located at 120 West Washington Street in the historic district of Napoleon, Ohio. Chiaverini, Inc. operated a jewelry sales and repair business on the premises.

{¶3} The parties' original lease specified a three-year term commencing on August 1, 2007 and ending on July 31, 2010. The lease included a covenant of quiet enjoyment and also specified the landlord's duty to maintain and repair the premises.

{¶4} In the summer of 2010, the parties signed a one-year lease extending the term through July 31, 2011. The original lease was amended to include the following changes: Chiaverini, Inc. was granted the options to extend the lease for a one year period upon the expiration of the lease in 2011 and in 2012; Chiaverini, Inc. was granted the right of first refusal to purchase the property upon GraBen's receipt of a bone fide offer to purchase the property by a third party; and the lease was modified to include a provision permitting GraBen to charge a late penalty if the rent was not received by the tenth of the month.[1]

{¶5} Chiaverini, Inc. subsequently exercised its first option to renew extending the lease to July 31, 2012. In the early part of 2012, it came to GraBen's attention that the second floor of the building had deteriorated and was causing the front façade of the building to bulge. GraBen engaged the services of an engineer who determined that there was a structural defect. GraBen sent a letter dated March 22, 2012 to Chiaverini, Inc. via certified mail stating the following:

> **We have been advised there are structural faults in the subject building and adjacent structure. In the interests of safety we request you relocate your business operations AS SOON AS POSSIBLE. Unfortunately we have no other premises available at the present time. If you care to make offer [sic] for purchase of the building under the circumstances, we would certainly be interested.**

---

[1] The lease stated that the rent payment was due on the first of the month. The record reveals that the late payment provision was added due to Chiaverini, Inc. consistently tendering the payment past the first of the month.

(Plaintiff Ex. 3, Def. Ex D) (Emphasis sic). GraBen hired a structural engineer to attach a support structure to the front of the building using steel girders and cables to provide temporary stabilization of the façade and to ensure public safety. In the interim, GraBen worked with the structural engineer to formulate a permanent solution to fix the defect. GraBen also met with the City of Napoleon's Building and Zoning Inspector and the owner of the adjacent building who shared a common wall with GraBen's building to discuss repair options. One of these options included the demolition of the building if repair was too cost prohibitive.

{¶6} Following receipt of the March 22, 2012 letter from GraBen, Chiaverini, Inc. continued to pay rent in compliance with the terms of the lease, which was accepted by GraBen. On May 8, 2012, Chiaverini, Inc. sent a letter to GraBen, which was its first correspondence with GraBen regarding the building's structural defect and Chiaverini, Inc.'s options under the lease. In this letter, Chiaverini, Inc. proposed to purchase the building in its current condition and the adjacent vacant lot for $3,000.

{¶7} On May 17, 2012, GraBen sent a letter to Chiaverini, Inc.'s stating a counter offer of $20,000 for the building. However, GraBen informed Chiaverini, Inc. that the adjacent vacant lot was not for sale.

{¶8} On June 5, 2012, GraBen sent another letter to Chiaverini, Inc., asking for a response to its counter offer and indicating that it would be willing to entertain a lower purchase price of the building.

{¶9} Chiaverini, Inc. subsequently sent a letter to GraBen giving notice that it intended to exercise its second option to renew extending the lease to July 31, 2013.  The letter made no mention of the prior offer to purchase the building. Rather, the letter simply requested GraBen fulfill its duty to repair the premises under the lease.

{¶10} On June 22, 2012, GraBen sent a letter Chiaverini, Inc. stating the following response to Chiaverini, Inc.'s notice of renewal.

> **Please be advised that this is wholly unacceptable.  As you are aware, the building has shifted.  The cost of repair greatly exceeds the value of the building.  Mr. Reese is working with the adjacent property owner in order to arrange demolition.[2]**

(Pl. Ex 8, Def. Ex M).  GraBen closed the letter by suggesting Chiaverini, Inc. take the necessary steps to vacate the premises.

{¶11} On June 30, 2012, GraBen conducted a site visit with a forensic engineer and the owner of the adjacent building.  In a subsequent report dated July 3, 2012, the forensic engineer determined that the cause of the structural defect was water seepage that expanded when frozen during winter seasons and created cracks weakening the brick façade.  The forensic engineer also concluded that the

---

[2] "Mr. Reese" refers to John Benton Reese, managing member of GraBen, LLC.

building was salvageable and advised GraBen that the cost of razing the building would likely exceed the cost of repair. In making his recommendation, the forensic engineer noted that razing the building would expose the adjacent building to the elements, potentially causing that building to suffer water problems through the common wall shared by the properties. He also noted the public interest in preserving the building, which is located in a historic district.

{¶12} In July of 2012, Chiaverini, Inc. failed to pay its rent to GraBen for the month of July. Chiaverini, Inc. claimed it attempted to tender the check on July 9, 2012, but GraBen refused to accept it. GraBen asserted the payment was never tendered.

{¶13} On July 18, 2012, GraBen sent a letter to Chiaverini, Inc. notifying Chiaverini, Inc. that it was in material violation of the lease for non-payment of rent and advised Chiaverini, Inc. that GraBen would accept no further rent payment and intended to retake possession of the premises on August 1, 2012.

{¶14} On July 27, 2012, Chiaverini, Inc. filed its complaint initiating this action, alleging a breach of GraBen's duty to maintain and repair the premises under the lease and a breach of the covenant of quiet enjoyment stated in the lease. Specifically, Chiaverini, Inc. claimed that the condition of the building and GraBen's failure to conduct any reasonable repairs caused Chiaverini, Inc. to suffer damages.

{¶15} Chiaverini, Inc. continued to conduct business on the premises without paying rent for the months of August and September 2012.

{¶16} GraBen filed an answer generally denying the allegations set forth in the complaint and specifically stating that it was excused from performing any obligations imposed on it under the lease due to the doctrines of impracticability, prevention of performance, and waiver. GraBen also filed a counterclaim for unpaid rent.

{¶17} In addition, GraBen filed a motion requesting the trial court enjoin Chiaverini, Inc. from continuing to operate its business on the premises and requested the trial court order Chiaverini, Inc. to immediately vacate. In an accompanying affidavit, GraBen claimed that it could not repair the building until Chiaverini, Inc. moved out.

{¶18} On August 30, 2012, after a hearing, the trial court issued a judgment entry granting GraBen's motion for injunctive relief upon the posting of a $50,000 bond. The trial court also ordered Chiaverini, Inc. to vacate the premises within fourteen days of GraBen posting the surety.

{¶19} On September 6, 2012, Chiaverini, Inc. filed a motion for summary judgment on the issue of liability, which was later overruled by the trial court.

{¶20} Chiaverini, Inc. vacated the premises and turned in its keys on September 24, 2012, and the case proceeded to discovery.

{¶21} On September 23, 2013, the trial court conducted a four day jury trial on the matter, where several witnesses and numerous exhibits were presented as evidence. The parties stipulated that the building had a structural defect and that Chiaverini, Inc. was not at fault in creating the defect.

{¶22} John Benton Reese ("Ben"), managing member of GraBen, testified that he first learned of the structural defect in March of 2012. He explained that he immediately hired an engineer to design and install a temporary stabilizing support system for the façade and began to explore more permanent options for addressing the issue. Ben testified that the repair process was complicated by the fact that the building shared a common wall with the adjacent business and by the fact that the building was located in a historic district, which implicated a specific set of historical preservation rules and municipal procedures. Specifically, Ben recalled that there were several obstacles impeding the repair process including obtaining historical preservation approval, securing building permits, and scheduling available contractors and engineers. Ben also testified that the repairs could not be completed until Chiaverini, Inc. vacated the premises. Ben's testimony regarding the delay in completing the repairs on the building was corroborated by the testimony of Tom Zimmerman, the Building and Zoning Inspector for the City of Napoleon, who explained the procedures for this type of construction in the historic district and the challenges they present. Notably, Mr.

Zimmerman also opined that the amount of time it took GraBen to complete the repairs "wasn't unreasonable." (Tr. at 128)

{¶23} Ben admitted that he initially wanted to raze the building and informed Chiaverini, Inc. of that intention. However, Ben explained that after the investigation conducted by the forensic engineer, he ultimately decided to proceed with repairing the building. Ben testified that this decision was not made until the second week of July 2012. He acknowledged that he did not inform Chiaverini, Inc. of the change of plans prior to Chiaverini, Inc. initiating this lawsuit on July 27, 2012. However, he was also adamant that Chiaverini, Inc. never tendered payment to him for July 2012 rent.

{¶24} Jascha Chiaverini ("Jascha"), an agent for Chiaverini, Inc., also provided testimony at trial. Jascha stated that he first noticed an issue with the front façade in August of 2011 when the front display window cracked. Jascha stated that the next morning GraBen sent a couple different maintenance employees who addressed the issue by placing a piece of tape over the cracks. Jascha recalled that in February of 2012 a larger piece of the front window broke. He stated that GraBen sent their employees to address the issue by again placing tape over the broken glass and eventually replacing the window with plywood. Jascha admitted that GraBen promptly responded to his calls regarding the broken window and that GraBen expressed deep concern about condition of the front

window. However, Jascha took issue with the manner in which GraBen chose to initially repair the broken window with tape and plywood.

{¶25} Jascha testified that the business could not relocate within a matter of months without suffering massive losses. He explained that he attempted to find another location but nothing available was suitable to the business' needs. Jascha presented the testimony of a realtor who testified that he showed Jascha a few properties in the area none of which were in Chiaverini, Inc.'s price range or had the desired specifications for the business. Jascha testified that he exercised the second option to renew the lease despite his knowledge of the structural defect and continued business operations because he wanted the business to stay in that location and he did not want to lose any claims he may have under the lease. Jascha was also adamant that he attempted to tender the July 2012 rent payment on July 9, 2012, but Ben refused to accept it.

{¶26} Before deliberating, the trial court provided the jury with instructions. One of the jury instructions included a statement regarding GraBen's affirmative defense that its performance of the repairs were impracticable due to Chiaverini, Inc.'s failure to vacate the premises.

{¶27} The jury returned a verdict in favor of GraBen on all counts, including GraBen's counterclaim for unpaid rent. In specific interrogatories the jury found that Chiaverini, Inc. failed to prove by a preponderance of the evidence

either that GraBen materially breached the duty to maintain and repair the premises or that GraBen materially breached the covenant of quiet enjoyment stated in the lease. In these interrogatories, the jury also found that Chiaverini, Inc. owed GraBen rent in the amount of zero dollars.

{¶28} In its October 10, 2013 judgment entry, the trial court journalized the jury's verdict and dismissed Chiaverini, Inc.'s complaint.

{¶29} On October 24, 2013, Chiaverini, Inc. filed a motion to set aside the jury's verdict and a motion for a new trial, which were both overruled by the trial court.

{¶30} Chiaverini, Inc. now appeals, asserting the following assignments of error.

<u>**ASSIGNMENT OF ERROR NO. I**</u>

**THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION OF SEPTEMBER 2012 FOR SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY.**

{¶31} In its first assignment of error, Chiaverini, Inc. argues that the trial court erred when it overruled Chiaverini, Inc.'s motion for summary judgment on the issue of liability. Specifically, Chiaverini, Inc. maintains that GraBen's June 22, 2012 letter stating that it intended to demolish the building and its subsequent failure to notify Chiaverini, Inc. that it had later decided to proceed with the repairs was a breach of its duty to maintain and repair the premises and a breach of

the covenant of quiet enjoyment as a matter of law. Based on this premise Chiaverini, Inc. contends that it was entitled to summary judgment.

**{¶32}** Initially, we note that Chiaverini, Inc. has provided no authority on appeal to support this proposition. Rather, the relevant case law states that the "covenant of quiet and peaceful enjoyment is breached when the landlord substantially interferes with the beneficial use of the premises by the tenant." *Howard v. Simon*, 18 Ohio App.3d 14, 16 (1984), citing *Frankel v. Steman*, 92 Ohio St. 197, 200 (1915). *The degree of the impairment is a question for the finder of fact. Dworkin v. Paley*, 93 Ohio App.3d 383, 386 (1994)(emphasis added).

**{¶33}** On this basis alone the trial court properly determined that summary judgment in this case was inappropriate since the degree to which GraBen's actions constituted a substantial interference with Chiaverini, Inc.'s beneficial use of the premises remained a question of fact for the jury.

**{¶34}** Notwithstanding this fact, the Supreme Court of Ohio has stated that "[a]ny error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 151 (1994). Thus, even assuming *arguendo* that

the trial court erred in denying Chiaverini, Inc.'s motion for summary judgment, the issue is rendered moot by the jury awarding judgment in favor of GraBen on all the claims tried. Accordingly, Chiaverini, Inc.'s first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED IN ITS INSTRUCTIONS TO THE JURY AND IN DENYING PLAINTIFFS [SIC] MOTION FOR SUMMARY JUDGMENT M.O.V. [SIC] AND FOR NON-TRIAL [SIC].**

{¶35} In its second assignment of error, Chiaverini, Inc. alleges that the trial court erred when it instructed the jury on the affirmative defense of the impracticability of performance regarding GraBen's duty to maintain and repair the premises. Chiaverini, Inc. also cites this alleged error as a basis for its motion to set aside the jury's verdict and its motion for a new trial.

{¶36} Generally, trial courts have discretion in determining how to charge a jury, and thus our review of the trial court's decision to give an instruction is under an abuse of discretion standard. *American States Ins. Co. v. Caputo*, 126 Ohio App.3d 401, 408 (1998). A strong presumption exists in favor of the propriety of jury instructions. *Burns v. Prudential Securities, Inc.*, 167 Ohio App.3d 809, 2006-Ohio-3550, ¶ 41; *Arthur Young & Co. v. Kelly*, 88 Ohio App.3d 343, 350 (1993). Moreover, the trial court should give requested jury instructions "if they are correct statements of the law applicable to the facts in the case." *Murphy v.*

-13-

*Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591 (1991). Instructions that, in their totality, are sufficiently clear to permit the jury to understand the relevant law will not be the cause of a reversal upon appeal. *Burns* at ¶ 41. Whether the jury instructions correctly state the law is a question of law, which we review de novo. *Murphy* at 591.

{¶37} In the instant case, Chiaverini, Inc. challenges the trial court's instruction to the jury on the affirmative defense of the impracticability of performance, which was requested to be included in the jury charge by GraBen and stated the following:

> **[GraBen] claims that it is excused from performing the contract because [GraBen's] performance has become impracticable as a result of [Chiaverini, Inc.'s] refusal to vacate the premises to facilitate the structural repair. If all of the requirements for impracticability are proved, then [GraBen] is excused from performing the contract. Impracticability of performance occurs when**
>
> **(A) performance of the contract by [GraBen] has become impracticable because of [Chiaverini, Inc.'s] refusal to vacate the premises to facilitate structural repair; and**
>
> **(B) it was a basic assumption of the parties at the time they entered into the contract that the necessity of [Chiaverini, Inc.] vacating the premises to facilitate structural repair would not occur; and**
>
> **(C) the impracticability of performance was not the fault of [GraBen].**
>
> **"Impracticability" means that the contract could not be performed by [GraBen], or could only be performed by**

-14-

**[GraBen] with extreme and unreasonable difficulty, expense, or risk of injury. The mere fact that performance became more difficult or expensive than [GraBen] originally anticipated does not justify a finding that performance was impracticable.**

(Tr. at 706-707). On appeal, Chiaverini, Inc. does not appear to contend that the trial court's instruction, which incidentally tracks the language of the Ohio Jury Instructions on impracticability, is a misstatement of the law. *See* OJI-CV 501.17. Rather, Chiaverini, Inc. disagrees with the trial court's characterization of the facts and the applicability of this particular instruction to the facts. Specifically, Chiaverini, Inc. asserts that there is "not one scintilla of evidence" that GraBen agreed to perform repairs on the building or that Chiaverini, Inc. refused to vacate the premises in order to allow the instruction on impracticability of performance to be given to the jury. (Appt. Brief at 13). Notably, Chiaverini, Inc.'s counsel objected at trial to the trial court giving this instruction.

{¶38} Contrary to the arguments made by Chiaverini, Inc. on appeal, the record demonstrates that GraBen presented ample evidence, by way of numerous documents and corroborating testimony, that it took steps to repair the building and that its progress was impeded by Chiaverini, Inc.'s decision to remain on the premises for six months after GraBen's initial request for Chiaverini, Inc. to vacate. Chiaverini, Inc. failed to pay rent for three of these months. Moreover, the record establishes that Chiaverini, Inc. only vacated the building upon receiving a mandate by the trial court that it do so. Therefore, given the evidence

-15-

presented at trial, we do not find the trial court's decision to include the instruction on the affirmative defense of impracticability of performance based on Chiaverini, Inc.'s refusal to vacate the premises to be an abuse of discretion. Chiaverini, Inc.'s second assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT ERRED IN ADMITTING IRRELEVANT AND PREJUDICIAL EVIDENCE FOR JURY CONSIDERATION.**

{¶39} In its third assignment of error, Chiaverini, Inc. asserts the trial court erred in admitting a particular exhibit which included invoices related to expenses that GraBen paid for repairing the building after Chiaverini, Inc. had vacated the premises pursuant to the trial court's order. Chiaverini, Inc. maintains that this exhibit confused the jury and created "undue and prejudicial sympathy" for GraBen. (Appt. Brief at 15).

{¶40} At the outset, we note that decisions involving the admissibility of evidence are reviewed under an abuse of discretion standard of review. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160 ¶ 122. For an abuse of discretion to have occurred, the trial court must have taken action that is unreasonable, arbitrary, or unconscionable. *State ex rel. Beacon Journal Publishing Co. v. Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, ¶ 59.

{¶41} At trial, GraBen's attorney attempted to introduce an exhibit through the testimony of Ben Reese on re-direct examination, which included a collection of all the invoices GraBen paid for engineering and construction to repair the structural defect in the building's front façade. These invoices represented work performed on the building from March 23, 2012 to January 14, 2013. Chiaverini, Inc.'s counsel objected to GraBen's use of the exhibit. The trial court overruled the objection on the basis that Chiaverini, Inc.'s counsel cross-examined Ben Reese on whether GraBen attempted to fulfill its duty to maintain and repair the premises and thus opened the door for GraBen's counsel's line of questioning using the exhibit.

{¶42} Chiaverini, Inc.'s primary claim in this lawsuit was that GraBen breached its duty to maintain and repair the premises under the lease. These documents supported GraBen's position that it had begun the repair process within a reasonable time after it was made aware of the structural defect. This exhibit also accounted for the amount of time it took to complete the repairs due to GraBen's compliance with municipal procedures, obtaining assessments from engineers and contractors, and Chiaverini, Inc.'s delay in vacating the premises. In addition, other than broadly speculating on the effect this exhibit had on the jury, Chiaverini, Inc. fails to cite any portion of record or any authority in support of its contention that the admission of this exhibit was somehow prejudicial to its

case let alone reversible error. Chiaverini, Inc.'s third assignment of error is overruled.

{¶43} For all these reasons the assignments of error are overruled and the judgment is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ROGERS, J., concur.**

**/jlr**